71 Ill. App.2d 219 (1966)
217 N.E.2d 320
Robert Seneca, Plaintiff-Appellant,
v.
Board of Fire & Police Commissioners of the Village of Lyons, Cook County, Illinois, and Stephen Wagoner, Defendants-Appellees.
Gen. No. 50,601.
Illinois Appellate Court  First District, Second Division.
May 31, 1966.
*220 *221 Sidney Z. Karasik, of Chicago (Mary M. Shaw, of counsel), for appellant.
Walter C. Wellman, of Lyons, for appellees.
MR. PRESIDING JUSTICE BRYANT delivered the opinion of the court.
This appeal comes from a judgment entered February 18, 1965, in the Circuit Court of Cook County affirming the findings of fact and the decision of the Board of Fire and Police Commissioners of the Village of Lyons. It is the appellant's theory that the findings of the Board of Fire and Police Commissioners, hereinafter called the Board, were against the manifest weight of the evidence and that the proceedings conducted by the Board were not fair, reasonable and impartial.
The proceedings before the Board were held subsequent to a charge that the appellant had accepted $30 for not arresting Stephen Wagoner, age 20, and Jane Bormann, age 16, on a charge of disorderly conduct in a public park.
The first witness to testify at the hearing was Stephen Wagoner, one of the complainants. He testified that at about 10:00 p.m. on the night of March 5, 1964, he and his girl friend, Jane Bormann, were necking in his automobile in Cermak Park in the Village of Lyons. According to this witness, the appellant approached their car from the right side and asked for Wagoner's driver's license. The officer told them they were under arrest. The appellant then left the couple and went to his squad car which pulled up alongside Wagoner's automobile.
*222 Wagoner said the policeman, whom he had identified as the appellant, was wearing "a policeman's uniform." The police car was described as a white car. "At the time I  the tail of it was pointed and I thought it was either an Oldsmobile or a Chevrolet." There was a second officer in the police car to whom another youth was talking, according to this witness. Wagoner could not hear any of the conversation between these two.
This witness testified that the appellant again came over to the right side of his car and told his girl friend to tell him to get out. Wagoner said the appellant told him that they would have to go to the police station and that both their parents would have to go down there and post bond for them. Then the appellant is reported to have said that Wagoner could post the bonds himself so that their parents would not have to go to the station. Wagoner said he was told that the bonds would be $200 each. "When I didn't have four hundred dollars on me and he asked me how much money I had on me, and I said I had sixty-two dollars.... Then Mr. Seneca ... said, I will tell you what. I will give your driver's license back if you give me forty dollars. Then he said right after that he said, well, make it thirty. I said, okay." The policeman was paid with three-ten-dollar bills.
Wagoner testified that the appellant told him not to speak of the transaction to anyone including his girl friend. The couple then went back to town and notified the police of what had occurred. Each of the two wrote out a statement at the police station that night.
On cross-examination this witness stated that the park was dark at night and that there are no street lights there. He said he was nervous and upset when talking with the policeman and that he did not want to be arrested. He said he did not get the policeman's badge number and saw nothing on the policeman's uniform *223 that indicated he was from the Lyons police department. The police car was described as being light in color.
The next time this witness saw the appellant was prior to a lineup held in the police station one or two days later. "We were going back to the Chief of Police's office. On the way I glanced in another office through a glass window and I saw Officer Seneca sitting in a chair there facing me.... There were other officers standing around the room. There were three or four officers in there." The witness said he identified the appellant to Mr. Klomann at this time though no one had told him that Officer Seneca was the man whom they suspected of accepting the bribe.
The next witness called was Frank Krall, a police officer for the Village of Lyons. He testified that on the night of March 5, 1964, Officers Robert Seneca and Anthony Misek were on duty. Theirs was the only car other than Krall's which was out that night. This witness further testified that the Village of Lyons had four police cars. Three of these cars were 1963 Chevrolets. Two of these cars are black, one a "kind of gold color," and the fourth car is a white, 1964 Chevrolet. This witness said he did not know if the other car on duty was the white car or a black one. He said the Lyons cars have a star on each side, the name Lyons and a patrol car number. He also said that some police cars of the neighboring villages could fit the description of being white with an insignia.
Officer Krall stated that the policemen of the neighboring villages would sometimes come in to Lyons if they had specific business to transact there. They usually informed the Lyons police department if they were going to be in Lyons, but to this witness' knowledge the Lyons police were not informed by any of the neighboring police departments that they were coming into the Village that night.
*224 The complainant's girl friend, Jane Bormann, testified that a policeman came up to Stephen Wagoner and her the night in question. She said she saw the police car; that it was white with an insignia on it. Her testimony did not differ in any material respect from that of Stephen Wagoner except that she said she could not identify the policeman.
Officer Seneca took the stand in his own behalf. He said that on the evening in question he and Officer Misek were on Ogden Avenue giving tickets to speeders. The time on the last ticket was 8:35 p.m. He said that around 10:00 p.m. they went to a restaurant to get something to drink and eat. He said that they saw some trucks illegally parked and that they made the drivers move their trucks. They were at the Chicagoland Motel at this time, apparently the place where the truck drivers were staying. They got a call at the Motel telling them to return to the station.
When they returned to the station, the witness said, they emptied their pockets. The appellant said he had seven one-dollar bills in his wallet at this time. He denied being in Cermak Park the night in question. He said that he talked to the owner of the Chicagoland Motel the night the bribe is said to have been taken, but he did not ask the owner to come before the Board to corroborate his testimony. The other policeman in the car, Anthony Misek took the stand to corroborate Seneca's testimony. It was stipulated that Officer Schiefelbein would testify that he searched the two officers and their car and did not find three ten-dollar bills. This was the evidence heard at the original hearing. The Board found the appellant guilty of official misconduct and ordered that he be dismissed from the police force.
Officer Seneca then filed suit in the Circuit Court of Cook County asking that the finding and order of the Board be set aside. This complaint alleged, among other *225 things, that the village prosecutor, Karl Klomann, discussed the matter informally with members of the Board on several occasions prior to the formal hearing; that Stephen Wagoner was given a lie detector test six days before the hearing, that he was accompanied by a member of the Board on this occasion, and that the results were announced to the Board; that the appellant went to have a lie detector test taken and that the operator refused to give him the test; that the Board held a hearing on the charges brought against the appellant and that he was not notified of or present at this meeting.
The Circuit Court remanded the proceedings to the Board stating, "that matters have occurred as set forth in Paragraph 5 not appearing in the record of said cause and that the evidence of one James Svoboda, Chief of Police of the Village of Lyons, was not taken at the hearing of said cause and that it is just that the aforesaid evidence be made a part of the record herein."
Accordingly, a second hearing was held. At that hearing the Chairman of the Board stated, "In behalf of the Board I wish to state that the only discussion I and the other Members of the Board had with Karl Klomann, the Village Prosecutor of the Village of Lyons, was pertaining to the filing of charges against the respondent, Robert Seneca, and in connection with our investigation of the charges as provided by statute.
"As to the lie detector tests both the complaining witness and the respondent challenged each other to take a lie detector test and both respondent and the complaining witness agreed to take lie detector tests, which I arranged to be taken by Leonards Keeler, Inc.
"Stephen A. Wagoner took a lie detector test on the 20th day of March, 1964, and I have here the results of that test which will be made a part of the record....
*226 "... the Board denies that any hearing was held on the charges for which the respondent was accused for the reason that no charges were filed prior to March 9, 1964, nor was any hearing held prior to said date or on said date and that the only investigation conducted by this Board was to determine whether or not there was probable cause for charges to be filed against said respondent.
"The result of the lie detector test given Stephen A. Wagoner was not considered in arriving at a decision due to the fact that no test was given to the respondent, Robert Seneca."
The appellant's attorney objected to the admission into evidence of the lie detector test results for the test given Stephen Wagoner. He stated that he had not asked to have the test result made part of the record, but only had complained in the Circuit Court that the Board members knew the test results. The chairman pointed to the Circuit Court order which required "that the aforesaid evidence" including the test result "be made evidence herein." The test result was admitted into evidence over the objection of the appellant. In the report concerning the lie detector test given Mr. Wagoner it was noted that "some reactions were noted on the question, `Do you have any doubt as to who the police officer was?'" The subject's answer to this question was, "No." The examiner noted that the reaction was not specific enough to be deception per se. Officer Seneca's attorney then asked for a further hearing so he could question the man who gave the lie detector test about the report. The Board indicated that such a request would be granted.
At this second hearing, the following further testimony was taken: James Svoboda, Chief of Police of the Village of Lyons, testified that the day following the occurrence he asked Officer Seneca if the charges were true. He said that the appellant told him they were not *227 true. He then testified that the day following that, he had another conversation with Officer Seneca and that at that time the appellant admitted to him that the charges were true. According to this witness, Officer Seneca said, "I took it, three ten-dollar bills."
No one else was present when this statement is said to have been made. Chief Svoboda testified that he did not make any written memoranda of the incident. He said he told Mr. Homolka, a member of the Board, of this confession, but does not remember whether this was before or after the first hearing. He said he thought it was after the hearing, but was not sure.
Robert Seneca took the stand again to deny that he had made a confession to the police chief. He testified that he had said, "Well, there were three ten-dollar bills that I was accused of taking." The appellant's attorney then asked permission to examine Mr. Homolka, which motion was denied. The second hearing was then adjourned.
[1, 2] The first claim made on this appeal is that the findings of the Board that Officer Seneca was guilty of soliciting a bribe were against the manifest weight of the evidence. Appellant points to Bruce v. Department of Registration, 26 Ill.2d 612, 187 NE2d 711 (1963) for the proposition that a judgment based on the controverted evidence of a single witness to a single transaction is against the manifest weight of the evidence and cannot be allowed to stand. That case, however, is not controlling in the matter before us. There, the testimony of the one witness, even if taken as true, did not establish that the alleged offense took place. The Supreme Court there said that the evidence was simply not enough to support the committee's finding that the plaintiff dentist had violated the Dental Practice Act.
In the case at bar, the testimony of Stephen Wagoner if taken as true, does establish the commission of the alleged offense. Mr. Wagoner testified that a police officer *228 solicited a bribe from him and he identified the appellant herein as that officer. The testimony of Miss Bormann is corroborative of at least the fact that the couple was approached by a policeman that night. She said, of course, that she could not identify the policeman and she could not testify as to any money passing hands, but what evidence she did give was basically consistent with that of Mr. Wagoner. Finally, there is the evidence given at the hearing by Police Chief Svoboda that the appellant admitted soliciting a bribe. All this evidence, if believed, is sufficient to sustain a finding that the appellant was guilty of official misconduct.
The appellant argues that the evidence shows the policeman who solicited the bribe might have been from another of the villages. The complaining witness, however, identified the appellant as being the policeman in question, picking him out, even before the lineup, from a group of policemen who were simply in the station house.
The appellant points out that it was dark in the park; this is true, but there is no evidence whatsoever that it was so dark that night that the witness could not have seen the policeman clearly enough to identify him. It is also argued that it is inherently improbable that a policeman would risk his career by soliciting a thirty-dollar bribe. We are not persuaded. In short, we find nothing that would permit us to say that the Board could not properly have found the way it did. The findings of the Board are prima facie true and correct and we cannot reverse where the evidence fairly tends to sustain the charges. Etscheid v. Police Board of Chicago, 47 Ill. App.2d 124, 197 NE2d 484 (1964).
[3] The second claim made by the appellant is that he was not given a fair and impartial hearing by the Board. It is first argued that the Board considered matters entirely outside the record. These extraneous matters, according to the appellant's brief, "were for the *229 most part the result of the participation by the Board members in the investigations which preceded the actual hearing."
According to the appellant's brief, "The day after the events on which this charge is based, the prosecuting witness appeared at what he described as a `preliminary hearing,' at which all the Board members and the Attorney for the Board were present. At that time, he told them the same story that he later told at the hearing. Officer Seneca was not present at that time, and so had no opportunity to deny the charge."
In his statement at the second hearing, the chairman remarked that the only investigation concerning this matter that had been conducted by the Board was to determine whether or not there was probable cause for charges to be filed against Officer Seneca. There is no indication in the record that this is not true, nor has the appellant cited any authority for the proposition that such an investigation was improper.
[4, 5] The next irregularity in the proceedings, according to the appellant, is the fact that the Board arranged for both the appellant and the complaining witness to take lie detector tests. According to a colloquy at the second hearing concerning the admissibility of the lie detector test administered to Stephen Wagoner, both the complaining witness and the plaintiff here challenged each other to take a lie detector test and both appellant and the complaining witness agreed to take these tests. Stephen Wagoner took the test; Officer Seneca did not. The Board admitted the results of the test given Stephen Wagoner into evidence. This was error.
Neither party to this appeal has raised the question of the general admissibility of lie detector tests in hearings before administrative boards. We find, however, that we do not need to deal with that general issue here. Even if the test were admissible in a hearing such as this, it would still be necessary to prove the *230 qualifications of the person who administered the test. People ex rel. Perz v. Schneemilch, 65 Ill. App.2d 337, 213 NE2d 50 (1965).
We find, however, that this error was not prejudicial. The most this report shows is that the complaining witness thought he was telling the truth. We have read the record at both hearings, and it is clear that Officer Seneca's defense was not based on the proposition that the complaining witness was lying; the defense was based on the theory that Mr. Wagoner was mistaken in his identification. This theory is based on the assumption that Mr. Wagoner thought he was telling the truth.
[6] The appellant next points to the fact that the Chief of Police of the Village of Lyons did not testify at the original hearing. They suggest that this indicates that Chief Svoboda fabricated his testimony when it looked as if there would not be enough evidence to sustain the charge. This argument is without merit. The Chief said he did not testify at the first hearing because no one asked him to testify. However this may reflect on the thoroughness of the original hearing, this cannot be said to render Chief Svoboda's testimony unworthy of belief.
Chief Svoboda testified that he told Mr. Homolka, a member of the Board, that Seneca had admitted taking the money, but the witness could not remember whether he related this before or after the original hearing was held. As we noted above concerning the results of the lie detector examination, any error that might have existed concerning information not received as evidence being related to members of the Board was cured at the second hearing when the information was properly admitted into evidence. This review is on the record as it stands at the close of the second hearing; we are not here concerned with failings which might have existed when the original hearing was concluded.
*231 [7] The final allegation of error concerns the statement made by the Chairman of the Board at the beginning of the second hearing. It is alleged that the Chairman made himself a witness and should have been subject to cross-examination. The "testimony" which the Chairman is said to have given is his statement that the only proceedings held before the Board prior to the first hearing was an investigation to determine whether there was probable cause for holding a hearing. As we noted above, there is no indication in the record that this is not true. The appellant should not be permitted to upset the orderly hearing of the Board by cross-examining the Board members only on the allegation that he thinks something might have been wrong. There is nothing in the record which would indicate that the Board acted improperly by meeting before the first hearing. The appellant's unsubstantiated suspicions are not sufficient to achieve a reversal of the Board's action in this court. McGann v. Lurie, 15 Ill. App.2d 297, 146 NE 2d 223 (1957).
Other points raised by the appellant are too insubstantial to merit comment. For the reasons given above, the judgment of the Circuit Court is affirmed.
Judgment affirmed.
LYONS and BURKE, JJ., concur.