24

Carl Chambliss, Plaintiff-Appellee, *v.* The Board of Fire and Police Commissioners of the City of East St. Louis, Defendant-Appellant.

(No. 73-311;

Fifth District—June 6, 1974.

Richard G. Younge, of East St. Louis, for appellant.

Hillebrand, Cook & Shevlin, Ltd., of East St. Louis (Bruce N. Cook, of counsel), for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

On September 12, 1972, the Board of Fire and Police Commissioners of East St. Louis, Illinois, discharged probationary Patrolman Carl Chambliss from the Police Department with the loss of all rights and benefits. This action came as a result of an administrative hearing held on August 29, 1972, with the plaintiff-appellee present and represented by counsel.

Written charges to the Board were made on July 31, 1972, by one Mrs. Annie Williams. The charges consisted of the conduct of the appellee and a fellow police officer on the night of July 21, 1972, concerning Vonne Marie Williams, the daughter of Mrs. Annie Williams. Specifically, it was alleged that one patrolman raped Miss Williams while appellee assisted in the act, in that he was in the vicinity of the occurrence and did not object or make a subsequent report.

After the Board announced its decision to discharge the two police officers, the appellee filed suit under the provisions of the Administrative Review Act. On July 19, 1973, the Circuit Court of St. Clair County reversed the decision of the Board and ordered that the appellee be restored to duty with the Police Department. The Board prosecutes this appeal.

The complaint filed by the appellee in the Circuit Court of St. Clair County asked for a judicial review of the record and that the decision of the Board be reversed. The trial court did not mention in its order the reason why it reversed the Board. However, appellee proposes three reasons why the trial court's order should be affirmed: (1) The appellee did not receive a fair hearing before the Board; (2) the results of the lie detector tests were not admissible at the Board hearing; and (3) the findings of the Board were against the manifest weight of the evidence.

■■ The first point to be determined in this appeal is whether the findings of the Board of Fire and Police Commissioners are supported by the evidence. Its decision can be set aside only if it was against the manifest weight of the evidence. In *DeGrazio v. Civil Service Com.*, 31 Ill.2d 482, our supreme court stated:

"On administrative review the court does not weigh the evidence and its function is limited to ascertaining if the findings and decision of the administrative agency are against the manifest weight of the evidence. * * * The court cannot substitute its

judgment for that of the Commission. (*Etscheid v. Police Board of Chicago*, 47 Ill.App.2d 124, 132.)"

On July 21, 1972, about 10:50 P.M., the appellee and a fellow police officer, Patrolman Bonner, drove their squad car into a ballpark in the City of East St. Louis to investigate a car parked on the field. The complaining witness, Vonne Marie Williams, 16, and her boyfriend, Charles Rives, were in the back seat of Rives' automobile. They were talking and kissing when the police officers arrived and ordered them out of the car. Vonne Williams testified that Officer Bonner asked her some questions and then talked to Charles Rives while she talked with the appellee a short distance away. Then Officer Bonner called Vonne Williams back to him and, after asking some personal questions, he talked once more with Charles Rives, telling him that he was going to take his girlfriend home. Then Officer Bonner told Vonne Williams to get in the front seat of the police car and he drove her to a vacant lot several blocks away from where the appellee and Charles Rives were waiting at the ballpark. Vonne Williams further testified that Officer Bonner made her get into the back seat of the police car and disrobe. He then sexually assaulted her, after which they returned to the ballpark. Vonne Williams on cross-examination testified that she could not run away as the doors of the car were locked and that she was frightened as the officer had threatened her.

Charles Rives' testimony coincided with the testimony of Vonne Williams up to the time she and Officer Bonner drove away. He stated that they were gone about 35 minutes, and he and appellee conversed at the ballpark during that time. He understood that Vonne was to be taken home and that Officer Bonner was going to let him go. Upon their return, Officer Bonner told Charles Rives to take Vonne home, and she got into the front seat of Rives' car. Charles further testified that Vonne was crying and she told him what had happened. Then Charles Rives attempted to catch the police car with his car but it eluded him. Charles Rives and Vonne Williams then drove directly to the police station where they reported what had happened. Lt. Curtis Smith, who was in charge, had all men going off duty at that time, which was midnight, to report to the main police station. While the police were reporting in at the station, Vonne Williams and Charles Rives were watching from an open door in the dispatcher's office and identified Officer Bonner and appellee upon their entrance to the station as the two officers who had accosted them earlier in the evening. Upon initial questioning by Lt. Smith, Officer Bonner and appellee denied being out at the ballpark and stopping anyone, and they persisted in their denials. However, when confronted with the complaining witness and Charles Rives, the two officers

changed their story and admitted talking with the couple at the park, even though it was out of their assigned district. Although Vonne Williams was unable to identify Officer Bonner at the hearing, as he was out of uniform, she did identify him at the police station. Charles Rives identified both officers at the police station and also gave a positive identification at the hearing.

All four persons involved, Vonne Williams, Charles Rives, Officer Bonner and appellee agreed to submit to a polygraph examination, which was administered a week after the incident in question. The polygraphist testified at the hearing as to the results of the tests, and he was cross-examined by counsel for appellee. The results of the tests showed that the police officers produced sensitivity to pertinent questions. This testimony together with other testimony and evidence was duly considered by the Board in its findings.

The appellee upon advice of his attorney refused to testify, as did Officer Bonner, claiming the protection of the Fifth Amendment of the United States Constitution. Our supreme court in *Kammerer v. Board of Fire & Police Comm'rs*, 44 Ill.2d 500, stated:

> "No case has been cited, and we have found none, which holds that a public employer, in the course of a disciplinary hearing into an employee's conduct, may not require the employee to disclose information reasonably related to his fitness for continued employment."

In the *Kammerer* case, the plaintiff, a patrolman, claimed he was compelled to answer questions which constituted a violation of his privilege against self-incrimination. The court stated, "* * * if a public employee refuses to testify as to a matter concerning which his employer is entitled to inquire, he may be discharged for insubordination, but if he does testify his answers may not be used against him in a subsequent criminal prosecution." Consequently, the appellee had every opportunity to refute the testimony that had been presented against him, but instead he remained silent and offered no evidence in his behalf. The Board was not properly advised and could have compelled him to take the stand.

The four cases cited by appellee in his brief concerning the questions whether the findings of an administrative agency are supported by the evidence differ from the case at hand. In all four of the cases, there was considerable testimony on behalf of the public employee involved. In our present case, the only defense of appellee was in the form of cross-examination of the witnesses by his counsel and appellee's written report. It is well established that on administrative review the court does not re-weigh the evidence. The findings of the Board are prima facie true

and correct and must be upheld where the evidence fairly tends to sustain the charges. *Etschied v. Police Board,* 47 Ill.App.2d 124.

■■ Neglect of duty has been defined as careless or intentional failure to exercise due diligence in performance of official duty. In determining whether conduct of officer amounts to neglect of duty warranting removal, it is immaterial whether neglect be willful, through malice, ignorance or oversight, if such neglect is grave. (*State ex rel. Hardie v. Coleman,* 115 Fla. 119.) Surely the conduct and behavior of the appellee on the night of July 21, 1972, falls clearly within the above definition. He stood by and did nothing while Officer Bonner drove Vonne Williams away from the ballpark. Upon their return, he did not inquire as to their absence and initially denied that he and Officer Bonner had even stopped at the ballpark. The appellee only changed his story when confronted by Vonne Williams and Charles Rives at the police station. As stated in *DeGrazio* at page 489:

> "In this type of proceeding involving the removal of a police officer, it is the function of the court to decide if the charges preferred against the officer are not so trivial as to be unreasonable or arbitrary, if the Commission acted on evidence that fairly tended to sustain the charges, and if its decision is related to the requirements of the service. The court cannot substitute its judgement for that of the Commission. (*Etschied v. Police Board of Chicago,* 47 Ill.App.2d 124, 132.)"

■■ The statute under which the Board acted provides in relevant part that "*  *  *  no officer  *  *  *  of the police department  *  *  * shall be removed or discharged except for cause  *  *  *." (Ill. Rev. Stat. 1969, ch. 24, sec. 10—2.1—17.) Cause has been construed by the courts to be some substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and which the law and sound public opinion recognize as good cause for his no longer holding that position. (*Murphy v. Houston,* 250 Ill.App. 385.) Appellee's actions on the night in question in assisting Officer Bonner in the sexual assault and then not reporting it amply supports the Board's finding of "cause" and are connected with the requirements of the police department and are not trivial. The findings of the Board of Fire and Police Commissioners of the City of East St. Louis were not against the manifest weight of the evidence, and the evidence was sufficient to sustain the factual findings by the Board.

■■ At the hearing concerning the conduct of the appellee, the three Board members were present along with the attorney for the Board and its secretary. The two police officers involved and their attorney were

present throughout the proceedings. Eight witnesses testified at length and every opportunity was presented to allow the Board to have a complete and thorough presentation of the facts. The appellee contends that his hearing held on August 29, 1972, was similar to the hearing in *Gigger v. Board of Fire & Police Comm'rs*, 23 Ill.App.2d 433. In the *Gigger* case, the Board was reversed because the police officer did not receive a fair hearing, and the opinion stated, " 'The purpose of judicial review of any administrative agency is to keep that agency within the judicial bounds described by law, and to guard the rights guaranteed by the Constitution and the Statutes * * *,' *Curtis v. State Police Merit Board*, 349 Ill.App. 448, 457 * * *."

An examination of the transcript of the hearing in the present case reveals that the conduct of the Board in conducting the hearing in no way parallels the hearing held in the *Gigger* case. The president and the two members of the Board in the present case were very much involved at all stages of the proceeding. The president of the Board, Joe Preston, asked 19 questions and made three rulings for the Board. Dr. Eisele, a Board member, asked 62 questions of various witnesses, and was particularly interested in examining the police officer who conducted the polygraph tests and Vonne Marie Williams, the victim of the assault. Mrs. Nash, the other member of the Board, inquired a total of 73 times of the witnesses and made a ruling on whether or not the appellee should be allowed to testify.

The attorney for the appellee was given the opportunity to cross-examine all the witnesses and did, in fact, cross-examine all but three. He waived any questions of those three witnesses. After the last witness testified, appellees' counsel informed the Board that no evidence would be presented. At no stage of the hearing did counsel for appellee notify the Board that he or his client were displeased with the manner in which the hearing was conducted. Counsel did not indicate that he was not ready to proceed when the hearing started and at the conclusion he did not ask for additional time to present his defense or any evidence. This unquestionably is in marked contrast to what happened in the *Gigger* case, wherein counsel for the plaintiff was limited in his cross-examination of the Board's witnesses and was hindered in many respects in trying to develop his defense at the hearing.

The Board's hearing on August 29, 1972, adhered to the fundamental concepts of a fair hearing in that appellee was given an opportunity to be heard, the right to cross-examine adverse witnesses was presented, and the rulings on the evidence were rendered impartially. "* * * an order must be based upon evidence produced in the hearing at which an opportunity is given to all interested parties to offer evidence and

cross-examine witnesses." *Curtis v. State Police Merit Board,* 349 Ill.App. 448, 457.

■■ The climate at the hearing in this case was one of fair play. The total record clearly reflects that anyone involved in the charges was allowed to come forward and tell his story. The Board obviously took an active part in the questioning and on several occasions the members asked nearly as many questions as their attorney. There was no effort to confine or limit the cross-examination of the witnesses and the two police officers were asked to take the witness stand. They declined; however, the Board accepted their written statements made to the chief of police concerning the incident in question. "It is imperative that the record of an administrative hearing show that an impartial inquiry into the facts was conducted." (*Gigger v. Board of Fire and Police Comm'rs,* 23 Ill. App.2d 433, 439.) The hearing before the Board in this case leaves no doubt that it was conducted in an atmosphere of impartiality and fairness.

■■ The appellee, his fellow police officer, the victim of the attack, and her boyfriend agreed to a polygraph examination conducted by the polygraph technician assigned to the laboratory division of the Police Department of St. Louis, Missouri. In *Austin v. Board of Fire & Police Comm'rs,* 7 Ill.App.3d 537, the court stated, "The Statutes prohibiting a court from requiring or suggesting that the defendant in a criminal trial or the plaintiff or defendant in a civil suit submit to a 'polygraphic detection deception test' apply neither in terms nor in principle to a proceedings before a Board of Fire and Police Commissioners. (*Courtesy v. Board of Fire and Police Comm'rs of the Village of Skokie,* 90 Ill.App.2d 31.)" In *Coursey* the court recognized that the effective and efficient operation of the police department requires that allegations of police conduct be thoroughly investigated and that the polygraph machine can be useful as an investigative tool when the test is skillfully prepared and is administered and interpreted by a qualified person.

■■ In the case cited by appellee, *Seneca v. Board of Fire & Police Comm'rs,* 71 Ill.App.2d 219, the results of the test given to the complaining witness were admitted. However, it was held on appeal that it would be necessary to prove the qualifications of the person who administered the test. (*People ex rel. Perz v. Schneenilch,* 65 Ill.App.2d 337). In the above two cases, the person operating the polygraph machine was not produced at the hearing and could not be examined. The polygraph operator called as a witness in the hearing before the Board in this case stated that he was an operator with the Police Department of St. Louis, Missouri, and was in his second year as a polygraphist. In response to a question from a Board member the polygraphist stated that he administered the examination and reached the decision as to the results as a

certified polygraphist. The attorney for the appellee in his cross-examination did not question the qualifications of the witness, but concentrated only on the results of the test as it pertained to the complaining witness. Consequently, the polygraphist was a competent witness and the results of the tests conducted by him could be considered by the Board in making its decision.

The order of the Circuit Court of St. Clair County setting aside the order of the Board of Fire and Police Commissioners is reversed and the cause is remanded with directions to enter a judgment restoring the decision of the Board of Fire and Police Commissioners discharging Carl Chambliss from the position of probationary patrolman of the East St. Louis Police Department.

Judgment reversed and cause remanded with directions.

G. MORAN, P. J., and EBERSPACHER, J., concur.