LOUIS J. BART, Plaintiff-Appellant, *v.* THE DEPARTMENT OF LAW ENFORCEMENT, DIVISION OF STATE POLICE, *et al.*, Defendants-Appellees.

Fourth District   No. 14110

Opinion filed September 19, 1977.

488

Michael J. Costello and J. H. Weiner, both of Springfield, for appellant.

William J. Scott, Attorney General, of Chicago (Gregory G. Lawton, Assistant Attorney General, of counsel), for appellees.

Mr. JUSTICE KUNCE delivered the opinion of the court:

Plaintiff Louis J. Bart appeals from a judgment of the circuit court of Sangamon County affirming a State Police Merit Board decision discharging him as a State police officer.

The superintendent of State police suspended the plaintiff for infraction of rules and regulations of the State police pending the filing of charges against the plaintiff with the Illinois State Police Merit Board. The complaint filed by the superintendent sought Bart's discharge for alleged misconduct on three separate occasions.

On July 7, 1974, while off duty, Bart had eight or nine beers before he went to John's Lounge in Springfield with some friends. The manager would not permit Bart to enter dressed in blue jeans contrary to a dress rule of the lounge. Bart exhibited his police identification, asked to use the rest room and after he came out he again showed his police credentials and demanded entrance which was again refused. Bart grabbed the manager in a headlock, dragged him up a stairway and hit him in the face. The owner, Delmar Kresse, upon investigating the disturbance, told Bart to release the manager and leave. Bart struck Kresse and told him he would have the bar closed in 15 minutes and that the establishment would be harassed every night and then left.

On December 10, 1974, again while off duty, Bart, while parking a truck

he was driving, suddenly backed into a parking spot causing a city bus driven by Leonard Linder to stop short to avoid an accident and drew abreast of Bart's truck, whereupon, Bart looking at Linder said, "Fuck you"; the comment was heard by Linder and some school children riding the bus. Linder started to get out of the bus to get the truck's license number when he saw Bart, with the door partially open and a revolver in his hand, pointing in the direction of Linder and the bus passengers.

The third charge occurred on January 20, 1975, when during the course of the investigation of the other charges and while being interrogated by a superior, Bart stated that he did not use any profane language. During the hearing, however, Bart testified that he did say, "Fuck you," to the driver.

■■■ Bart's contention that the decision of the Merit Board is against the manifest weight of the evidence is unmeritorious. Witnesses on Bart's behalf were either not present, were not looking, or could not see at critical moments. Only Bart directly contradicts the inculpating testimony, and in doing so he did not deny being involved in the incidents, but rather claimed innocent interpretations for his actions. For example, Bart stated that he did not intentionally strike anyone at John's Lounge and that, in the incident with the bus driver, explained that he pulled out his service revolver and placed it on the truck dashboard because he was provoked. The credibility of witnesses is determined by the Board. (*Daniels v. Police Board of Chicago* (1976), 37 Ill. App. 3d 1018, 349 N.E.2d 504.) This court may reverse only where the decision is against the manifest weight of the evidence. (*Kerr v. Police Board* (1974), 59 Ill. 2d 140, 319 N.E.2d 478.) A review of the entire record clearly shows that the Board's decision in this matter is not against the manifest weight of the evidence.

Bart next argues that the superintendent of the State police elected a remedy by suspending Bart for 30 days on the charges in this case and could not thereafter move for Bart's discharge from employment. Bart views the superintendent's actions as violating the double jeopardy and due process clauses of the Federal Constitution.

The relevant statutory provisions are:

"Disciplinary measures prescribed by the Board may be taken by the Superintendent for the punishment of infractions of the rules and regulations of the division as promulgated by the Department. Such disciplinary measures may include suspension of any State policeman for a reasonable period, not exceeding 30 days." Ill. Rev. Stat. 1973, ch. 121, par. 307.13.

"Except as is otherwise provided in this Act, no State policeman shall be removed, demoted or suspended except for cause, upon written charges filed with the Board by the superintendent and a

hearing before the Board thereon upon not less than 10 days' notice at a place to be designated by the chairman thereof." Ill. Rev. Stat. 1973, ch. 121, par. 307.14.

■■ The double jeopardy argument is inapposite. Double jeopardy has application only in criminal prosecutions. (*Village of Maywood v. Houston* (1956), 10 Ill. 2d 117, 139 N.E.2d 233.) State Police Merit Board proceedings are civil proceedings. (*Ceja v. State Police Merit Board* (1973), 12 Ill. App. 3d 52, 298 N.E.2d 378.) No double jeopardy problem exists. Bart raised the double jeopardy issue before the Board. The Board ruled:

"That when such written charges are filed with the Board by the Superintendent, the Superintendent may suspend the State Policeman so charged pending a hearing on the written charges."

■■ The Board cites no authority for this proposition, and no express language to this effect can be found in the statute or in the Board's rules. However, assuming *arguendo* that the suspension pending discharge proceedings was improper, it does not affect the validity of the later discharge. Bart's remedy for any allegedly improper suspension is not before us.

The Illinois Supreme Court has given content to the phrase "due process" in the context of employees' rights. In *Powell v. Jones* (1973), 56 Ill. 2d 70, 305 N.E.2d 166, a class action was filed on behalf of all the Department of Transportation employees laid off without benefit of a pre-layoff hearing. The supreme court found that the employees had a legitimate claim of entitlement to continued employment that was safeguarded by due process guarantees. However, the court said the requirements of due process are necessarily proportional to the weight of an employee's interest as balanced against the countervailing interests of society in effective and efficient governmental operation. Layoff was seen to be a less onerous action than discharge. Accordingly, the hearing required prior to a discharge was not necessary prior to a layoff. Variances in procedure were constitutionally permissible. The laid-off employees had a right to request reconsideration, request demotion, and request a hearing. The State had a compelling interest in effecting personnel changes for reasons of economy and efficiency.

■■■ In *People ex rel. Cotter v. Conlisk* (1974), 17 Ill. App. 3d 346, 308 N.E.2d 1, a police officer was indefinitely suspended pending a hearing and disposition of charges. The officer sought only to recover his pay for the period of suspension that exceeded 30 days, but the court also decided that authority existed for the superintendent of police to suspend an officer and move for his dismissal based on the same charges. The statutory power at issue in *Cotter* is contained in section 10—1—18.1 of the Illinois Municipal Code (Ill. Rev. Stat. 1969, ch. 24, par. 10—1—18.1),

and is similar to the statute involved in this case; these similar personnel statutes are to be construed *in pari materia*. (See *Kropel v. Conlisk* (1975), 60 Ill. 2d 17, 322 N.E.2d 793.) Bart argues only that the fact of his prior suspension precludes, under due process, a subsequent discharge proceeding on the same charges. We hold that due process is not violated in that situation. (*Powell*; and see *Cotter*.) To hold otherwise would mean that the person of doubtful character or competence would still be working pending the discharge proceedings. Due process in this context does not demand such an unreasonable result.

■■ ■ Bart's next point is that the charges against him should have been severed since they took place on three totally separate occasions. Bart likens his position to that of a criminal defendant being placed on trial over objection for separate criminal offenses that are not part of the same transaction. Bart's case authorities rely on provisions of the Illinois Code of Criminal Procedure (Ill. Rev. Stat. 1975, ch. 38, pars. 111—4(a), 114—8) relating to joinder of charges. However, the criminal statutes are not applicable to administrative proceedings. (*Ceja*.) Likewise, no other statutory right exists for severance. Based on the interests enunciated in *Powell*, we find that due process does not require separate hearings for separate charges.

■■ Bart next contends that the standards of conduct for State police are constitutionally vague. The content of Bart's argument clearly shows that he is challenging the standards as overboard rather than vague. Bart has standing to make these challenges since he alleges the rules were impermissibly applied to him.

On the issue of vagueness, the rule is that for a standard to be vague, men of common intelligence must necessarily guess at its meaning. (*Broadrick v. Oklahoma* (1973), 413 U.S. 601, 37 L. Ed. 2d 830, 93 S. Ct. 2908.) The rules at issue are in plain language and Bart's actions fall within the clear type of conduct that would obviously be prohibited under any construction of the rule. (*Dombrowski v. Pfister* (1965), 380 U.S. 479, 14 L. Ed. 2d 22, 85 S. Ct. 1116; *Broadrick*.) The vagueness argument does not have merit.

A rule is overbroad if, upon its face, and as authoritatively construed, it is so indefinite as to permit punishment for the exercise of constitutionally protected activity. (*Cox v. Louisiana* (1965), 379 U.S. 536, 13 L. Ed. 2d 471, 85 S. Ct. 453.) However, Bart's actions were not constitutionally protected; in fact, many acts were violations of criminal statutes. The State interest is that the integrity of the law enforcement process requires citizenry support of, faith in, and respect for its peace officers. These interests are severely undermined when off-duty police engage in criminal acts or appear in public drunk, are profane in their language and show disrespect for their fellow man. Bart's rights to free speech and individual

lifestyle, under these circumstances, are subordinate to the State's interest. The standards, as applied in this case to Bart, are not overbroad.

■■ Bart next contends that a statement given by him to his superior during the investigation of the charges was improperly admitted at the discharge hearing because he had protested answering and the taking of the statement. However, since he did not object to its admission at the hearing, the issue is waived.

Bart finally argues that results of a polygraph examination he took at his own instigation and expense should have been admitted into evidence at the discharge hearing, relying on *Chambliss v. Board of Fire and Police Commissioners* (1974), 20 Ill. App. 3d 24, 312 N.E.2d 842. In *Chambliss* there was agreement by both parties to take the polygraph examination, although it was not agreed to have it admitted into evidence. *Chambliss*, in reaching the result that such tests are admissible, first adopted the statement from *Austin v. Board of Fire & Police Commissioners* (1972), 7 Ill. App. 3d 537, 542, 288 N.E.2d 113, 117, that "[s]tatutes prohibiting a court from requiring or suggesting that the defendant in a criminal trial or the plaintiff or defendant in a civil trial submit to a 'polygraphic detection deception test' apply neither in terms nor in principle to a proceedings before a Board of Fire and Police Commissioners." This refers only to a statute which does not address the admissibility of the underlying test. In that case, the board members were admonished to ignore the results of the test because they were not evidence. Whether or not the results were actually admissible in evidence was a question never reached by the *Austin* court, as no attempt was made to introduce them into evidence. The court merely held that it was not reversible error for the Board to be aware of the test results because they had been instructed to disregard them. Other cases cited by the *Chambliss* court pointed out that the polygraph is a useful investigative tool when the test is skillfully prepared and is administered by a qualified person (*Coursey v. Board of Fire & Police Commissioners* (1967), 90 Ill. App. 2d 31, 234 N.E.2d 339), and that the results of a polygraph examination were inadmissible because the qualifications of the person administering the test could not be proved (*Seneca v. Board of Fire & Police Commissioners* (1966), 71 Ill. App. 2d 219, 217 N.E.2d 320; *People ex rel. Perz v. Schneemilch* (1965), 65 Ill. App. 2d 337, 213 N.E.2d 50).

None of the cases cited in *Chambliss* for its conclusion that polygraph tests results are admissible in evidence in an administrative hearing either considered or reached that precise issue. The fact that the Illinois statutes on lie detector tests do not apply to administrative hearings does not imply that such tests should be admissible in evidence in these hearings, especially so since the board hearing is undoubtedly civil in nature. *Ceja.*

■■  Although we believe the result reached in *Chambliss* to be questionable, we do not pass on whether a properly qualified lie detector test is admissible in an administrative proceeding because, on the facts of this case, we find that even if the test was erroneously omitted, the error was harmless when weighed against the clear and convincing evidence against Bart and did not deprive him of due process.

For the reasons stated the judgment of the circuit court of Sangamon County is affirmed.

Affirmed.

GREEN, P. J., and MILLS, J., concur.