JOHN WASHINGTON, Plaintiff-Appellant, *v.* CIVIL SERVICE COMMISSION OF THE CITY OF EVANSTON *et al.*, Defendants-Appellees.

First District (1st Division)    No. 80-2081

Opinion filed June 22, 1981.

Paul N. Keller, of Tatel, Levy & Howlett, P. C., of Chicago, for appellant.

Ellen J. Alexander, of Evanston, for appellees.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

A police officer of the City of Evanston, John Washington (plaintiff), brought this action against the City and its Civil Service Commission (defendants) for administrative review of a decision affirming the suspension of plaintiff for 29 days. The trial court affirmed. Plaintiff appeals.

After an investigation by the Evanston Police Department, the chief of police informed plaintiff on February 8, 1979, that plaintiff was to be suspended for 29 days for violation of departmental rules of conduct. Plaintiff requested, and received, a hearing before the Evanston Civil Service Commission (Commission) to review his suspension.

At the hearing, Police Lieutenant Thomas Joyce testified that on June 29, 1978, he received a telephone call from a person identifying himself as the attorney for Lorelei Gilmore, who had been arrested by the Evanston police earlier that day. The attorney reported plaintiff had solicited Gilmore for sex after arresting her, and she had agreed to meet plaintiff later that evening. Joyce also received a call from Gilmore. She reiterated her charge of being solicited for sex by plaintiff in exchange for leniency. Police were dispatched to the place where plaintiff and Gilmore were supposed to meet, but plaintiff was not observed.

Police Sergeant Daniel Mangas testified that on June 29, 1978, at approximately 11 p.m., plaintiff approached his car. Plaintiff asked Mangas what he "thought of the Gilmore girl * * * as far as her looks." Plaintiff told him Gilmore was "receptive" to plaintiff, and asked whether it would be wise for plaintiff to "make contact" with her. Mangas advised plaintiff it could be a setup since Gilmore was then under arrest. Plaintiff left Mangas' car, stating he was going to a local restaurant.

Gilmore testified that on June 29, 1978, her car was stopped by Evanston police. She and two female companions were arrested for shoplifting. She rode alone with plaintiff in his squad car to the police station. Plaintiff told her he could help her out if she cooperated.

Gilmore was first kept in the squad room with the other arrestees. Plaintiff then took her alone into another room called the lunchroom. There, plaintiff told her he had sex in the lunchroom before. He solicited her for sex, implying if she refused, he would order her car dismantled. She agreed to cooperate, but refused plaintiff's request that she undress partially. She said she was afraid of someone else coming in. Shortly thereafter, a young woman and another police officer entered the lunchroom on different occasions, each remaining for a few minutes. After they left, plaintiff continued typing up a report and asking questions. Gilmore promised to meet plaintiff later when he was off duty. Gilmore stated she was kept in the lunchroom for about 1 to 1½ hours before being returned to the squad room.

As Gilmore left the station after being admitted to bail, plaintiff

walked her to her car. He told her his car was brown so she would recognize it when he drove up to her apartment building. When Gilmore arrived home, she called her attorney and the Evanston police. She reported in detail her allegations against plaintiff. She did not keep her appointment with plaintiff. She did not actually reside at the address taken by the police from her driver's license.

Robert Cummings, a licensed polygraph examiner, testified as to his training, clientele, experience, and professional affiliations. Over objection by counsel for plaintiff, the Commission permitted Cummings to testify as to the polygraph examination he had given to Gilmore on July 7, 1978. Cummings stated he asked Gilmore a series of questions pertaining to the details of her allegations against plaintiff. Her answers corroborated her previous statements. Cummings stated that as measured by the polygraph instrument itself, Gilmore told the truth as to each question.

A second polygraph examiner, Leonard Harrelson, testified as to his training, experience, clientele, and professional affiliations. Counsel for plaintiff stipulated as to polygraph methods in general, but requested testimony concerning the precise method used by Harrelson in testing plaintiff. Counsel for plaintiff repeated his objection concerning the admissibility of the polygraph examination and argued that plaintiff had not been provided legal counsel at the examination itself.

Harrelson testified he administered a polygraph test to plaintiff on September 28, 1978. Plaintiff did not sign a waiver or submit voluntarily to the test. Plaintiff had been ordered to take it by a superior officer. Harrelson stated plaintiff was asked a series of questions concerning details of the investigation that had been supplied by the police department. Through his answers, plaintiff denied Gilmore's allegations. In Harrelson's opinion, plaintiff's answers were "deceptive."

Police Officer Ronald Grinnel testified for plaintiff. Grinnel stated that on June 29, 1978, about 11 p.m., as he and plaintiff were leaving the station, plaintiff told Grinnel he was hesitant to go to his car. Plaintiff said he did not want the three female suspects, who had just been released, to see him enter his car.

Ray Strong, a civilian and former police sergeant, testified he had been in and out of the lunchroom several times during a 10-minute period on June 29, 1978, while plaintiff was in there with Gilmore. He heard no inappropriate conversation between them.

Plaintiff testified he brought Gilmore to the station at approximately 4 to 4:15 p.m. He immediately brought her into the lunchroom and handcuffed her to a chair. Plaintiff left the lunchroom, leaving Gilmore alone. All three prisoners were brought together into the squad room by 5:15 or 5:30 p.m. The prisoners were later taken to holding cells. Plaintiff was subsequently required to make several trips to the police department of a neighboring community.

Plaintiff went off duty at 11:05 or 11:10 p.m. Plaintiff walked with Officer Grinnel to the front of the station. He pointed out the three women as they were leaving, and told Grinnel he was not leaving then. Plaintiff went over to Sergeant Mangas' car and told him one of the three women "tried to make a pass" at him. Plaintiff asked Mangas if he thought Gilmore was "hot" or "nicelooking." Plaintiff said he wouldn't go out with someone like Gilmore. Plaintiff then went over to his own car, which was parked next to Gilmore's. Plaintiff stated he hadn't wanted the departing women to know his car, but admitted he had told a security guard where to park it when it was brought to the police station. Plaintiff left the station intending to keep an appointment with a friend at a Chicago night club, but went home when he suspected he was being followed.

Plaintiff stated it took him only 2 or 3 minutes of the 1½ hours Gilmore was in his custody to prepare the arrest report. When plaintiff was not with Gilmore in the lunchroom, she was either alone or with Officer Curtis, a female, and another officer. Plaintiff categorically denied all accusations brought against him, and stated Gilmore herself made advances to him. He did not report those advances because this happened frequently when plaintiff arrested women.

The Commission found the manifest weight of the evidence supported the disciplinary report and affirmed the suspension. The Commission found plaintiff in violation of departmental rules:

> "Rule 4, in that it constitutes conduct and action taken to use his official position for personal gain or influence.
>
> Rule 8, in that it constitutes disrespect and wilful maltreatment of a person, to wit: Lorelei Gilmore.
>
> Rule 47, in that it constitutes solicitation of a reward as a condition for not performing his sworn duty to uphold the law and obey the rules of the Police Department."

In this court plaintiff argues the decision was against the manifest weight of the evidence and the Commission erred in placing the burden of proof on plaintiff. Plaintiff also objects to the admission of the polygraph examination results as evidence.

The law applicable to the review of administrative decisions by this court is set forth in *Davern v. Civil Service Com.* (1970), 47 Ill. 2d 469, 471-72, 269 N.E.2d 713, *cert. denied* (1971), 403 U.S. 918, 29 L. Ed. 2d 695, 91 S. Ct. 2229, as follows:

> "The Administrative Review Act provides that agency findings on questions of fact are *'prima facie* true and correct.' (Ill. Rev. Stat. 1967, ch. 110, par. 274.) We have construed this provision to limit the function of the reviewing court to ascertaining whether

the findings and decisions of the administrative agency are against the manifest weight of the evidence. [Citations.] The courts will not reweigh the evidence, but are limited to a determination whether the final decision of the administrative agency is just and reasonable in light of the evidence presented. [Citations.] Neither the appellate court nor the trial court may substitute its judgment for that of the administrative agency."

■■ In addition, review by this court "does not include the reweighing of evidence" or the "determination of the credibility of the witnesses." (*Paramount Consulting Agency, Inc. v. Johnson* (1979), 75 Ill. App. 3d 749, 753, 394 N.E.2d 672, and cases there cited.) This is true "even though an opposite conclusion might be reasonable." *Moriarty v. Police Board* (1972), 7 Ill. App. 3d 978, 982, 289 N.E.2d 32.

A review of the record impels us to affirm the finding of the trial court that the findings of the Commission are supported by the manifest weight of the evidence. Several important factors buttress Gilmore's account of the incident and strengthen her credibility. The evidence shows plaintiff kept her isolated from the other suspects and police officers for a substantial length of time while preparing an arrest report. By plaintiff's own admission, this document took only minutes to prepare. A fellow police officer testified plaintiff spoke to him about the advisability of making "contact" with Gilmore even though plaintiff had arrested her only hours before. Gilmore promptly reported this incident to her attorney and to the Evanston police. She has never wavered in her testimony.

Plaintiff testified Gilmore made advances to him and he was afraid of being "set up." Plaintiff also stated he failed to keep an appointment with a friend after going off duty that night because he believed he was being followed. Yet, plaintiff never reported this matter to his superiors. We have here at best simply a clash of credibility. The Commission saw the witnesses and heard their testimony. The Commission was in the best position to evaluate credibility. We cannot say their evaluation was improper or contrary to the manifest weight of the evidence. In this regard, we approve the opinion expressed by the able trial judge that the evidence supports the finding of the Commission even without considering the results of the polygraph tests. The added consideration of this additional evidence makes the result more manifest.

■■ Plaintiff urges this court to reject the findings of the trial court and the Commission that the polygraph examination results were admissible before the Commission. Plaintiff contends there is sufficient legislative and judicial mistrust of polygraph examinations to require a contrary result.

We disagree. In *Chambliss v. Board of Fire and Police Commissioners* (1974), 20 Ill. App. 3d 24, 31-32, 312 N.E.2d 842, this court held polygraph examination results were admissible before the defendant board provided the administrators of the test were present at the hearing to establish their qualifications and be subject to cross-examination. The *Chambliss* court cited *Austin v. City of East Moline Board of Fire & Police Commissioners* (1972), 7 Ill. App. 3d 537, 542, 288 N.E.2d 113, in holding that statutes prohibiting civil or criminal courts from requiring or suggesting that a party submit to polygraph tests were inapplicable before an administrative body. (20 Ill. App. 3d 24, 31.) The *Chambliss* court also cited *Coursey v. Board of Fire and Police Commissioners* (1967), 90 Ill. App. 2d 31, 234 N.E.2d 339, *appeal denied* (1968), 38 Ill. 2d 627, stating (20 Ill. App. 3d 24, 31):

> "In *Coursey* the court recognized that the effective and efficient operation of the police department requires that allegations of police conduct be thoroughly investigated and that the polygraph machine can be useful as an investigation tool when the test is skillfully prepared and is administered and interpreted by a qualified person."

In the instant case, both of the polygraph examiners testified before the Commission. They detailed the procedures used in giving the tests. They were subject to extensive cross-examination by able counsel for plaintiff. We believe the procedures followed adequately met the requirements established in *Chambliss*.

Defendant contends the holding in *Chambliss* was fatally undermined in *Bart v. Department of Law Enforcement* (1977), 52 Ill. App. 3d 487, 367 N.E.2d 773. There, Bart was discharged by the State Police Merit Board. Relying on *Chambliss*, Bart argued on appeal that the board erroneously failed to accept as evidence the results of a polygraph examination obtained at his own expense. The *Bart* court refused to accept this contention, and criticized the ruling in *Chambliss* as follows (52 Ill. App. 3d 487, 494):

> "Although we believe the result reached in *Chambliss* to be questionable, we do not pass on whether a properly qualified lie detector test is admissible in an administrative proceeding because, on the facts of this case, we find that even if the test was erroneously omitted, the error was harmless when weighed against the clear and convincing evidence against Bart and did not deprive him of due process."

This explicit refusal to overrule the result reached in *Chambliss* impels us to affirm the admission of the polygraph evidence in the case before us. Even if we elected to adhere completely to *Bart*, we would

reach the conclusion that admission of the polygraph results in the instant case would be only harmless error.

Plaintiff also contends the results of the polygraph examination given to him are inadmissible because defendants erred in failing to advise plaintiff of his right to have counsel present at the examination. Plaintiff argues polygraph examinations are governed by the following statutory language (Ill. Rev. Stat. 1977, ch. 24, par. 10—1—18):

> "Before any officer or employee in the classified service of any municipality may be interrogated or examined by or before any disciplinary board, or departmental agent or investigator, the results of which hearing, interrogation or examination may be the basis for filing charges seeking his removal or discharge, he must be advised in writing as to what specific improper or illegal act he is alleged to have committed; he must be advised in writing that his admissions made in the course of the hearing, interrogation or examination may be used as the basis for charges seeking his removal or discharge; and he must be advised in writing that he has the right to counsel of his own choosing present to advise him at any hearing; interrogation or examination; * * *."

■■ We disagree. The polygraph examination is far different from the adversarial examinations by a disciplinary board, departmental investigator or agent as specified in the above statute. The polygraph examination of plaintiff was administered by independent personnel and not by officials of defendants' police authority. The examinee was provided in advance with a set of questions to be asked. There is no independent questioning by the polygraph examiner. We therefore conclude polygraph examinations are not subject to the above statute.

We find the authorities cited by plaintiff are inapposite. In *Danison v. Paley* (1976), 41 Ill. App. 3d 1033, 1036, 355 N.E.2d 230, this court reversed the plaintiff's suspension because the letter sent to plaintiff informing him he was under investigation did not contain the required statutory warnings. As noted above, we have concluded the plaintiff's polygraph examination in the instant case does not qualify as an interrogation under the statute. Furthermore, plaintiff testified he was duly advised of his right to have counsel present at an interview before a superior officer, held on August 7, 1978, over a month prior to the polygraph examination.

Plaintiff also cites *Williams v. Police Board* (1972), 8 Ill. App. 3d 345, 290 N.E.2d 669. In *Williams*, the plaintiff, a policeman, was suspended for refusing to undergo a polygraph examination. The trial court reversed the suspension. This court reversed the trial court, holding a police officer cannot disobey an order by a superior to undergo a polygraph exami-

nation. (8 Ill. App. 3d 345, 347.) The court considered the applicability of the provisions of section 10—1—18.1 of the Illinois Municipal Code (Ill. Rev. Stat. 1971, ch. 24, par. 10—1—18.1), which established the identical safeguards now at issue. This court noted that the record was "void of any indication that the results of the questioning may have been the basis for charges seeking plaintiff's removal from the force." (8 Ill. App. 3d 345, 347.) In finding the statute inapplicable to the facts before it, the court stated (8 Ill. App. 3d 345, 347):

> "Moreover, if it should ultimately develop that the information gained through the polygraph examination should become the basis of charges against plaintiff seeking his removal, it could then be appropriate for plaintiff to raise the statute as a bar to the introduction of that information at the disciplinary hearing."

We find this language inapplicable to the facts in the instant case. The investigation into plaintiff's alleged misconduct began almost immediately after its occurrence with prompt reporting of the incident. As noted above, plaintiff was interrogated by a superior officer on August 7, 1978, whereas his polygraph examination was not conducted until September 28, 1978. Thus, the polygraph examination itself could not have been the sole basis for bringing charges against plaintiff.

Plaintiff finally contends the Commission erred in requiring plaintiff to bear the burden of proving by a preponderance of the evidence that the suspension was unwarranted. Plaintiff argues the entire proceedings before the Commission were tainted by this ruling, and the City of Evanston should have borne the burden of proof together with the burden of going forward with the evidence.

In defense of the Commission's ruling, defendants cite *Kropel v. Conlisk* (1975), 60 Ill. 2d 17, 322 N.E.2d 793. In *Kropel*, the supreme court reviewed the various statutes involving suspensions of municipal employees and their rights to appeal, stating (60 Ill. 2d 17, 26-27):

> "It is clear from all of the statutes and rules set forth above that a major difference between a suspension for less than 30 days and a suspension for more than 30 days is that the latter requires a hearing before the sentence can be imposed. In effect, the department has the duty to go into a hearing and prove its case for suspension of more than 30 days. In the former instance, the *burden is on the employee to seek review and establish why the suspension is unwarranted.*" (Emphasis added.)

Defendants urge this language is controlling, and sufficiently negates plaintiff's contention. Plaintiff, however, argues this language is dicta, and has no bearing on the issue. We believe, however, it is unnecessary for us to resolve this difference of opinion as plaintiff's contention must be rejected on other grounds.

First, we note this argument to be purely theoretical. The Commission expressly ruled that the City of Evanston bore the burden of going forward with the evidence. But the hearing was conducted exactly as if the City had borne the burden of proof. Second, the Commission found specifically on the entire record that the manifest weight of the evidence supported the charges against plaintiff. Such a strong finding against plaintiff obviates any theoretical "taint" resulting from consideration of burden of proof. Finally, the standard of review by this court remains unaffected by this issue. As above shown, we are limited to "ascertaining whether the findings and decisions of the administrative agency are against the manifest weight of the evidence." (*Davern*, 47 Ill. 2d 469, 471.) This contention must therefore be rejected.

■■ One additional factor requires our most careful consideration. We are mindful of the need for proper departmental discipline in a police force. We are also fully aware of the need to protect prisoners from unwarranted aggressive treatment by police officers. However, upon review of the entire record, we are compelled to find the discipline imposed on plaintiff to be unduly harsh and thus unwarranted. The loss of an entire month's salary is a serious deprivation to a police officer. In our opinion, a suspension for 5 days constitutes sufficient punishment here as well as a cogent warning against any repetition of this type of incident.

Acting under the authority vested in this court by the rules of the Supreme Court of Illinois (Ill. Rev. Stat. 1979, ch. 110A, par. 366(a)(5)), the order appealed from is modified by reducing plaintiff's suspension to a period of 5 days; and, as thus modified, the order appealed from is affirmed.

Judgment affirmed as modified.

CAMPBELL, P. J., and McGLOON, J., concur.