DAVID S. MYERS *et al.*, Plaintiffs-Appellees, *v.* COOK COUNTY POLICE AND CORRECTIONS MERIT BOARD *et al.*, Defendants-Appellants.

First District (5th Division)   No. 77-970

Opinion filed December 8, 1978.

Bernard Carey, State's Attorney, of Chicago (Paul P. Biebel, Jr., and Dorothy Kirie Kinnaird, *Assistant State's Attorneys*, of counsel), for appellants.

Gerber & Gerber, of Chicago, for appellees.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Plaintiffs brought this action under the Administrative Review Act (Ill. Rev. Stat. 1975, ch. 110, par. 264 *et seq.*) to review final administrative orders entered by the Cook County Police and Corrections Merit Board (Board) on February 13, 1976. The orders discharged plaintiffs from their positions with the Cook County Police Department (Department) for failure to obey orders to submit to polygraph examinations. The circuit court reversed the decision of the Board. On appeal defendants contend that plaintiffs' refusal to obey the orders constituted grounds for discharge and that adequate evidence was adduced before the Board to support the discharge.

On August 25, 1965, the sheriff of Cook County filed complaints against plaintiffs before the Board, charging that on August 23, 1965, plaintiffs were ordered to submit to polygraph examinations in regard to:

"(A). The unauthorized release of information, to unauthorized persons, pertaining to an investigation of an alleged bribe of Patrolman Donald Shaw by Joseph Auippa and Jacob Bergbreiter.

(B). The unauthorized release of information to unauthorized persons pertaining to investigations and/or planned raids that were conducted by the Vice Control Unit of the County Police Department of Cook County at any time since the RESPONDENT has been a member of the County Police Department of Cook County."

The complaints further alleged that plaintiffs failed to submit to the polygraph examinations and that such failure was in violation of the Department Rules and Regulations, the Board's Rules and Regulations, and the oath of office taken by plaintiffs.

At the consolidated hearing before the Board the following pertinent evidence was adduced.

*Lieutenant Richard Lowthorp*

He is director of the Sheriff's Police Department Vice Commission and responsible for internal investigation of complaints against Department members. On August 20, 1965, he accompanied plaintiffs to the offices of John M. Reid & Associates, a private firm administering

polygraph examinations, where he ordered them to submit to polygraph examinations in regard to "a current investigation." Plaintiffs refused to comply with the orders, stating that they wished to consult attorneys. Returning with plaintiffs to his office, he again ordered them to take the examinations. They again refused, requested an opportunity to consult attorneys and inquired as to the nature of the investigations. He informed them that the polygraph examinations would concern "the unauthorized release of information to unauthorized persons" concerning an investigation being conducted by the Department's Vice Control Unit and the unauthorized release of information concerning raids being planned or conducted by the Sheriff's Police.

Plaintiffs returned to his office on the morning of Monday, August 23, 1965, and requested both additional time to consult their attorneys and a list of the specific questions to be asked in the polygraph examinations. Upon their refusal to take the examinations at that time, he ordered them suspended from duty.

He further testified that the Department Rules and Regulations provided that members of the Department may be ordered to submit to polygraph examinations "in connection with criminal matters or complaints against Department members." He stated that a complaint within the meaning of this rule had been filed against plaintiffs by Chief Arthur J. Bilek of the Sheriff's Police on August 19, 1965. Chief Bilek instructed him to suspend plaintiffs if they failed to submit to the polygraph examinations.

*Chief Arthur J. Bilek, Cook County Sheriff's Police Department*

During the summer of 1965 he became aware of "an apparent disclosure of confidential information to unauthorized sources" concerning a Department investigation of "the Aiuppa-Shaw matter." He was informed by "a member of the Sheriff's Police Force" that, according to an unidentified informant, plaintiffs might be the source of this unauthorized release of information. Thereafter, on August 20, 1965, he ordered Lowthorp to request that plaintiffs take polygraph examinations concerning the unauthorized release.

On the afternoon of Friday, August 20, 1965, he personally told plaintiffs that he "felt a polygraph examination would be necessary in the Department's interest" and told them the areas upon which they would be examined. He then allowed plaintiffs until the following Monday morning to seek the advice of counsel.

*Officer Donald Shaw, Cook County Sheriff's Police Department*

He is assigned to the Department's Central Vice Control. He submitted a list to Chief Bilek containing the names of persons he believed might have access to information concerning the investigation of Joseph

Aiuppa. He named "just about everybody on the Vice Unit," including Bilek. This list was submitted to assist in determining the source of the leak of information.

*David S. Myers, on his own behalf*

He served as a member of the Department as a patrolman, detective and vice officer from approximately February 15, 1961, until August 23, 1965, when he was suspended from duty. He denied having been "in any way involved in the release of information regarding the alleged bribe of [Officer] Shaw by Joseph Aiuppa." On the evening of August 19, 1965, he was ordered by Lowthorp to report the next morning to John M. Reid & Associates to take a polygraph examination. When he arrived there he was met by Lowthorp who informed him that he would be examined concerning "the Aiuppa matter." He requested the questions which were to be asked but Lowthorp "was ordered not to give me the questions." An employee of John M. Reid & Associates then asked him to sign a document which appeared to release the firm from any liability and give them permission to publish the results. He refused to sign this release and authorization, informing Lowthorp that he wished to consult an attorney prior to taking the examination. Lowthorp again ordered him, verbally and in writing, to take the examination but he again refused. He then met with Chief Bilek who asked him why he refused to take the examination. He informed Bilek that he "couldn't actually refuse," but that he wished to consult an attorney. Bilek informed him that he would have until 9 a.m., Monday, August 23, 1965, to consult an attorney. When he reported for duty on August 23, 1965, he again refused to take the polygraph examination, stating he had not "had time to seek proper legal counsel." He was then suspended from duty.

He testified that he had volunteered to give a written statement concerning any release of information in the Aiuppa investigation. On cross-examination he admitted that he was familiar with the Department's rules and regulations.

*Donald Leslie De Vriendt, on his own behalf*

Prior to his suspension on August 23, 1965, he had been a member of the Cook County Sheriff's Police Department for "a little over four years," serving first as a patrolman and later with the Central Vice Control Unit. He denied being in any way involved in the release of information regarding the Aiuppa investigation.

He substantially corroborated the testimony of Myers regarding the appearance at John M. Reid & Associates, the meeting with Chief Bilek on August 20, 1965, and the final refusal to take the polygraph examinations on August 23, 1965.

On February 15, 1966, the Board found that plaintiffs had failed to

obey lawful orders from a ranking officer and ordered them "removed forthwith from the County Police Department."

Plaintiffs filed a complaint for judicial review of the Board's dismissal orders in the Circuit Court of Cook County. On February 3, 1967, the trial court found that the Board failed to find that the orders requiring plaintiffs to submit to polygraph examinations were lawful and remanded the cause to the Board for a de novo hearing on the reasonableness of the orders.

The de novo hearing was held before the Board on November 19, 1968, January 7, 1969, and February 18, 1969. Additional testimony was generally limited to Chief Bilek's reasons for ordering plaintiffs to submit to polygraph examinations. After testimony was heard the Board, on February 18, 1969, ordered written closing arguments and briefs to be filed, with plaintiffs to file the initial brief within two weeks. No arguments or briefs, however, were filed, and the Board, as constituted at the de novo hearing, did not render a decision on the matter.

Subsequently, on June 5, 1974, plaintiffs petitioned the newly constituted Cook County Police and Corrections Merit Board for reinstatement to duty and for full pay from August 23, 1965. The Board denied plaintiffs' petition and ordered arguments and briefs to be filed as originally ordered by the previous Board, treating the matter as a continuation of the hearing de novo. After briefs were filed the Board, on February 13, 1976, found that the orders requiring plaintiffs to submit to polygraph examinations were lawful and that the plaintiffs' failure to obey the said orders was in violation of the Rules and Regulations of both the Department and the Board and the oath of office taken by plaintiffs. The Board found that the suspension of August 23, 1965, was proper and ordered plaintiffs discharged as of August 23, 1965.

Plaintiffs appealed from this discharge by filing a second complaint for judicial review on March 12, 1976. In this complaint they alleged that the failure of the original Board to render a decision after taking additional testimony concerning the reasonableness of Chief Bilek's orders resulted in a denial of a hearing de novo and of their right to due process of law. They further alleged that the present Board entered the final discharge orders on February 13, 1976, after merely reading transcripts of the earlier hearings rather than conducting a hearing de novo or taking any further evidence. On April 29, 1977, the trial court found that the Board's discharge of plaintiffs was improper and ordered that plaintiffs be reinstated to their respective positions of employment as of August 23, 1965. Defendants' motion for reconsideration of the order was denied by the trial court on May 20, 1977.

Defendants appeal from the order denying their motion for

reconsideration and seek to have the Board's order of discharge affirmed.

Opinion

Defendants contend that the trial court erred in reversing the orders of dismissal entered by the Board. They argue that the Board properly discharged plaintiffs from their positions as police officers for failure to obey a superior officer's command to submit to polygraph examinations.

■■ Plaintiffs were ordered to submit to polygraph examinations on both August 20, 1965, and August 23, 1965. The orders were issued by Chief Bilek and were transmitted to plaintiffs both verbally and in writing. Plaintiffs refused to comply with these orders on each occasion, insisting upon an opportunity to seek legal counsel and demanding a list of the questions to be asked in the polygraph examinations. This court has held that because of the very nature of a police force a commanding officer has the inherent authority to order a police officer to submit to a polygraph examination in order to insure proper operation of the force. (*Williams v. Police Board* (1972), 8 Ill. App. 3d 345, 290 N.E.2d 669; *Coursey v. Board of Fire & Police Commissioners* (1967), 90 Ill. App. 2d 31, 234 N.E.2d 339.) In *Coursey* we affirmed the discharge of a police officer for his failure to comply with an order to submit to a polygraph examination, stating:

> "As a private individual Coursey did not have to submit to the examination, but as a policeman he did not have the privilege of refusing; having refused, he forfeited any right he had to be retained on the police force because his refusal was in conflict with his obligation as a policeman to obey the order of his commanding officer. * * * To sustain his action would be to vitiate the systematic authority and discipline upon which proper enforcement of the law is dependent." 90 Ill. App. 2d 31, 43, 234 N.E.2d 339, 345.

Plaintiffs concede that they refused to comply with the orders as issued but contend that their refusal was justified because the orders were arbitrary, capricious and unlawful. They argue that Chief Bilek had no legitimate basis to suspect that they had released confidential information and that the orders to submit to polygraph examinations were therefore unreasonable. We considered a similar argument in *Williams v. Police Board* (1972), 8 Ill. App. 3d 345, 290 N.E.2d 669, where a police officer argued that the order requiring him to submit to a polygraph examination was unreasonable and that he was therefore justified in refusing to take the examination. Rejecting his line of argument, we stated that:

> "We find no indication, and plaintiff has cited no authority for the

proposition, that the order must be demonstrably or *prima facie* reasonable before it must be obeyed. The lack of such authorities is expected in a situation involving a military or para-military institution such as the police department as an opposite rule could not prevail if the discipline necessarily inherent in such an operation is to be maintained." 8 Ill. App. 3d 345, 347, 290 N.E.2d 669, 672.

■■ We agree with the reasoning of the *Williams* case and hereby adopt the opinion expressed therein. We do not believe that a police officer should be allowed the prerogative of refusing to obey a direct order from a superior while seeking a judicial determination as to the reasonableness of that order. Such practice would severely thwart the authority, discipline and respect which are so essential to the effective and efficient operation of the police force.

Plaintiffs, however, rely upon *Coursey v. Board of Fire & Police Commissioners* (1967), 90 Ill. App. 2d 31, 234 N.E.2d 339, in support of their contention that an order to submit to a polygraph examination must be demonstrably reasonable. In *Coursey* the court stated that "[t]here may be circumstances wherein a superior officer's order that a subordinate submit to a polygraph test would be arbitrary." (90 Ill. App. 2d 31, 42, 234 N.E.2d 339, 344.) However, we note that the cited language was merely dicta and that the court there did not uphold the right of the police officer to refuse to submit to the polygraph examination. To the extent that the dicta in *Coursey* is inconsistent with the clear holding of *Williams*, we choose to follow *Williams*.

Plaintiffs contend, however, that they were denied due process of law when the Board failed to hold a hearing de novo as ordered by the trial court. After the Board originally ordered plaintiffs discharged on February 15, 1966, the trial court ordered a hearing de novo to consider whether the orders compelling plaintiffs to submit to polygraph examinations were reasonable. The Board subsequently heard additional testimony and on February 18, 1969, ordered briefs to be filed. Although plaintiffs were ordered to file the first brief, they failed to do so. They instead waited until June 5, 1974, to again petition the Board for reinstatement. The Board, consisting by then of an entirely new membership, took no additional evidence, but reviewed transcripts of the earlier hearings and ordered briefs submitted. Plaintiffs argue that this procedure resulted in a denial of due process of law.

■■ As we have held herein, the law does not require that an order compelling a police officer to submit to a polygraph examination be demonstrably reasonable. (See *Williams v. Police Board* (1972), 8 Ill. App. 3d 345, 290 N.E.2d 669.) At the initial hearing conducted by the Board in 1965 and 1966, ample evidence was adduced to support the Board's

finding that plaintiffs had refused to obey orders issued by Chief Bilek. Indeed, plaintiffs do not contest such a finding. Accordingly, we do not believe that plaintiffs were entitled to a hearing de novo on the question of the reasonableness of the order. Therefore, the Board's alleged failure to conduct such a hearing de novo could not have deprived plaintiffs of their due process rights.

For the foregoing reasons we hold that the action of the circuit court in setting aside the determination of the Board was improper. The judgment of the circuit court is therefore reversed, and the cause is remanded with directions to reinstate the order of discharge entered by the Cook County Police and Corrections Merit Board.

Reversed and remanded with directions.

SULLIVAN, P. J., and WILSON, J., concur.