(No. 55501.—
(No. 55599.—

JOHN KASKE, *et al.*, Appellants, v. THE CITY OF ROCKFORD *et al.*, Appellees.—ROBERT COLLURA, Appellant, v. THE BOARD OF FIRE AND POLICE COMMISSIONERS OF THE VILLAGE OF ITASCA, Appellee.

*Opinion filed January 24, 1983.—Rehearing denied April 8, 1983.*

North, Ohlson, Boyd, Condon & Ellsworth, of Rockford (Scott M. Boyd, of counsel), for appellants John Kaske and Paul A. Triolo.

Charles E. Box and Kathleen Elliott, Corporation Counsel, of Rockford (Joseph C. Haughey, Fred E. Inbau, John Henry Wigmore, James P. Manak, and Charles F.

Marino, of Chicago, James A. Murphy, of Peoria, and Wayne W. Schmidt, of South San Francisco, California), for appellee City of Rockford.

James A. Murphy, of Peoria, and James P. Manak and William E. Hornsby, Jr., of Chicago, for *amicus curiae* Illinois Association of Chiefs of Police.

Stanley H. Jakala, of Berwyn, for *amicus curiae* Fraternal Order of Police, State of Illinois.

Richard F. McPartlin, of Chicago, for *amicus curiae* Illinois Police Association.

Heckenkamp and Simhauser, P.C., of Springfield (I. J. Feuer and Mark Rabin, of counsel), for *amicus curiae* Policemen's Benevolent and Protective Association.

Rock, Fusco, Reynolds & Heneghan, of Chicago (Philip J. Rock and William Paul Jones, of counsel), for appellant Robert Collura.

Thomas F. McGuire, of Long Grove, for appellee Village of Itasca.

James A. Murphy, of Peoria, and James P. Manak and William E. Hornsby, Jr., of Chicago, for *amicus curiae* Illinois Association of Chiefs of Police.

Stanley H. Jakala, of Berwyn, for *amicus curiae* Faternal Order of Police, State of Illinois.

Richard F. McPartlin, of Chicago, for *amicus curiae* Illinois Police Association.

Heckenkamp and Simhauser, P.C., of Springfield (I. J. Feuer and Mark Rabin, of counsel), for *amicus curiae* Po-

licemen's Benevolent and Protective Association.

JUSTICE CLARK delivered the opinion of the court:

This case is a consolidation of two different appeals concerning the giving of polygraph examinations to public law-enforcement officials and the admissibility of the polygraph results in administrative disciplinary proceedings. In cause No. 55501, the plaintiffs, Rockford police officers John Kaske and Paul A. Triolo, brought suit against the city of Rockford and its police chief seeking to prohibit the defendants from compelling the plaintiffs to undergo polygraph examinations. In cause No. 55599, the plaintiff, Itasca police officer Robert Collura, is challenging a decision of the Itasca board of fire and police commissioners ordering his discharge following a hearing in which the results of a polygraph examination were admitted into evidence. We discuss the latter case first.

Collura v. Board of Fire and Police Commissioners of the Village of Itasca.

On January 26, 1980, the chief of police of the village of Itasca, Stanley J. Rosol, filed charges before the Itasca board of fire and police commissioners against Itasca police officer Robert Collura. It was alleged that Officer Collura had on December 27, 1979, while on duty, made improper physical contact with Alicia Martinez. Officer Collura was also charged with making an untruthful report about what happened between him and Alicia Martinez. Alicia Martinez had made a statement to the chief of police that Officer Collura had sexually touched her while she was being detained on December 27 at the scene of a reported burglary.

Prior to the filing of charges by the chief of police, the plaintiff had been ordered to submit to a polygraph examination or face disciplinary action. Plaintiff appeared for the polygraph examination on January 8, 1980, and asserts that the polygraph examiner prejudged

the plaintiff's veracity before the test was administered. The plaintiff also testified that the examiner was abusive and argumentative, which caused the plaintiff to become angry and hostile.

At the hearing before the Itasca board of fire and police commissioners the polygraph examiner was called as an expert witness and the results of the polygraph examination were admitted into evidence. The polygraph examiner testified that the plaintiff lied in answering questions concerning his alleged improper contact with Alicia Martinez. The operator indicated that he had four years of experience conducting examinations, and denied that he had prejudged Collura or had acted in a hostile or argumentative way toward the plaintiff. Counsel for the plaintiff attacked the competency of the examiner and objected to the admissibility of the examiner's testimony and the results of the polygraph test.

The board found Collura guilty of the charges and determined that his conduct warranted a discharge. Officer Collura filed for administrative review of the board's order pursuant to the Administrative Review Act (Ill. Rev. Stat. 1979, ch. 110, par. 264 *et seq.*). The circuit court of Du Page County affirmed the decision of the board of fire and police commissioners, and the appellate court, under Supreme Court Rule 23 (73 Ill. 2d R. 23), found no error in the admission of polygraph results which were founded upon the testimony of a properly qualified and certified examiner. 97 Ill. App. 3d 1199.

Kaske v. City of Rockford

On February 2, 1981, the plaintiffs filed a complaint for declaratory judgment with the circuit court of Winnebago County, asking that the defendants, the city of Rockford and Delbert Peterson, the chief of police of the Rockford police department, be restrained and enjoined from ordering the plaintiffs to undergo polygraph examinations. A temporary restraining order was granted and

then extended on four occasions by the agreement of the parties. The plaintiffs also filed a motion for a preliminary injunction on February 3, 1981. The defendants filed a motion to dismiss which the circuit court granted with leave to amend.

An amended complaint was filed with the court on March 13, 1981, and an amendment to that complaint was allowed to be filed on March 20, 1981. The defendants filed a motion to dismiss on March 30, 1981.

On April 16, 1981, the circuit court entered an order dismissing the amended complaint, finding that it was insufficient to state a cause of action for declaratory judgment. The court denied the motion for a preliminary injunction, dissolved the temporary restraining order, and granted the plaintiffs' leave to file a further amended complaint if "they chose to do so." The plaintiffs elected to stand on their amended complaint and filed their notice of appeal the same day.

On August 12, 1981, the appellate court, in a Rule 23 order (73 Ill. 2d R. 23), affirmed the trial court's denial of the preliminary injunction and dismissed the appeal. (98 Ill. App. 3d 1203.) We granted plaintiffs leave to appeal (73 Ill. 2d R. 315).

Plaintiffs Kaske and Triolo are close personal friends. In December of 1980 plaintiff Triolo brought an action for dissolution of marriage. When his wife was informed, she told Triolo that she would "take his job." Shortly thereafter, plaintiff Triolo's wife contacted supervisory officers of the Rockford police department and arranged a meeting with the plaintiffs' immediate supervisory lieutenants. At the meeting Mrs. Triolo made oral statements that the plaintiffs had smoked marijuana on different social occasions. A week later Mrs. Triolo contacted one of the lieutenants with whom she had met and recanted her previous allegations, indicating that what she had said was not true.

The chief of police ordered both plaintiffs to submit written reports concerning the allegations. The plaintiffs did submit reports in which each denied the use of any drugs.

The plaintiffs were then ordered to undergo polygraph examinations. They were informed that any information obtained as a result of the examinations might be used against either or both of the plaintiffs (in bringing charges) before the board of fire and police commissioners of Rockford. The plaintiffs were told by the chief of police that their refusal to obey the order would subject them to charges before the board of fire and police commissioners of Rockford.

Prior to the order of the chief of police that plaintiffs prepare reports concerning the allegations of drug use, Officer Kaske had submitted a letter of resignation to the police department and soon thereafter asked the chief of police to accept a withdrawal of the resignation. Kaske was informed that he had to appear before the board of fire and police commissioners of the city of Rockford to request withdrawal of his resignation. At the January 6, 1981, meeting of the board, the chief of police informed the board that Kaske was under investigation for alleged drug use. The board allowed Kaske to withdraw his letter of resignation.

The defendants suggest that because Officers Kaske and Triolo did not exhaust administrative review procedures that this court should not review the case since the plaintiffs fail to state a cause of action for declaratory judgment. While our judiciary does not function as an original forum for immediate review of the propriety of all of a chief's orders to his subordinates in that department, the exhaustion of the administrative review process is not the exclusive remedy in the instant case. (See also *People ex rel. Fahner v. American Telephone & Telegraph Co.* (1981), 86 Ill. 2d 479, 485.) A declaratory

judgment is not barred because other relief can be obtained. It is rather an optional, alternative remedy. *Kupsik v. City of Chicago* (1962), 25 Ill. 2d 595, 598.

The appellate court in *Buege v. Lee* (1978), 56 Ill. App. 3d 793, correctly recognized that a plaintiff is not required to "provoke a disciplinary proceeding against himself so as to provide a forum to challenge the chief's order. It is central to the purpose of the declaratory judgment procedure that it allow 'the court to take hold of a controversy one step sooner than normally—that is, after the dispute has arisen, but before steps are taken which give rise to claims for damages or other relief. The parties to the dispute can then learn the consequences of their action before acting.' (Ill. Ann. Stat., ch. 110, par. 57.1, Historical and Practice Notes, at 132 (Smith-Hurd (1968).)" 56 Ill. App. 3d 793, 798.

Section 57.1 of our Civil Practice Act permits declaratory judgments to be rendered in instances when an "actual controversy" exists. (Ill. Rev. Stat. 1979, ch. 110, par. 57.1.) An actual controversy means that the case presents " 'a concrete dispute admitting of an immediate and definitive determination of the parties' rights, the resolution of which will aid in the determination of the controversy or some part thereof. [Citations.]' " *Miller v. County of Lake* (1980), 79 Ill. 2d 481, 487, quoting *Underground Contractors Association v. City of Chicago* (1977), 66 Ill. 2d 371, 375; accord *Howlett v. Scott* (1977), 69 Ill. 2d 135, 141-42.

The requirement of an "actual controversy" was intended to distinguish justiciable issues from hypothetical disputes. (*A. S. & W. Club v. Drobnick* (1962), 26 Ill. 2d 521, 524.) We find that the dispute between the plaintiffs and the chief of police over submitting to the examination and the consequences of taking it or those resulting from a refusal to take the test establish an actual controversy here.

We next address the issue of whether the results of the polygraph examination are admissible at an administrative hearing before the board of fire and police commissioners.

Decisions of our appellate court have been divided on the admission of polygraph evidence. In *Washington v. Civil Service Com.* (1981), 98 Ill. App. 3d 49, the appellate court concluded that the results are admissible at an administrative hearing provided that the examiners are present, their qualifications are established, and they are subject to cross-examination.

The court in *Washington* relied upon decisions in *Chambliss v. Board of Fire & Police Commissioners* (1974), 20 Ill. App. 3d 24, 31-32, and *Coursey v. Board of Fire & Police Commissioners* (1967), 90 Ill. App. 2d 31, *appeal denied* (1968), 38 Ill. 2d 627, for the proposition that because an unhindered inquiry into subordinates' actions is absolutely necessary where a police chief is attempting to run an effective department, the results of a polygraph test that an officer is compelled to undergo are admissible at an administrative hearing where the board of fire and police commissioners is investigating the conduct of the police officer.

The reasoning of the appellate court in *Washington* incorporated the rationale of *Chambliss* and *Coursey* that the police chief should not be deprived of a useful investigative tool where the examination is administered and the results interpreted by a qualified examiner. The findings of the appellate court in *McGowen v. City of Bloomington* (1981), 99 Ill. App. 3d 986, and *Sommer v. Goetze* (1981), 102 Ill. App. 3d 117, contradict the holding in *Washington*.

In *McGowen* the court found that the admission of polygraph results materially affected the decision of the board of fire and police commissioners, recognizing that "the polygraph has attained a stature and an acceptance

in the public mind far in advance of that achieved in the world of jurisprudence," and that it remains "incompetent evidence." (99 Ill. App. 3d 986, 990, 991, citing *People v. Monigan* (1979), 72 Ill. App. 3d 87.) The court concluded that the admission of such evidence amounted to error as an abrogation of a fundamental rule of evidence. 99 Ill. App. 3d 986, 991.

In *Sommer v. Goetze* (1981), 102 Ill. App. 3d 117, the appellate court determined that the sheriff's merit commission of Tazewell County erred in admitting polygraph results as substantive evidence against a deputy sheriff where the potential jeopardy was the loss of employment.

We now find that in view of our holdings in *People v. Baynes* (1981), 88 Ill. 2d 225, and *People v. Szabo* (1983), 94 Ill. 2d 327, 362-63, that the results of a polygraph examination are not admissible before the board of fire and police commissioners. It is unnecessary to reiterate the exhaustive review of polygraph evidence we undertook in *People v. Baynes*. It is enough to say that in holding that admission of stipulated-to polygraph evidence at a criminal trial constituted error, we recognized that the process of accurately recording the instrument's results and then correctly interpreting those results "has not reached a level of sophistication that makes it generally more probative than prejudicial." (*People v. Baynes* (1981), 88 Ill. 2d 225, 239.) We found in *Baynes* that the stipulation of the parties did not make evidence otherwise considered not reliable enough admissible because it was agreed to. 88 Ill. 2d 225, 240.

In *People v. Szabo* this court held that the trial court acted properly in excluding the results of polygraph examinations at a death sentencing hearing, where the rules governing the admission of evidence are not applicable (Ill. Rev. Stat. 1979, ch. 38, par. 9—1(e)). In *Szabo* we again pointed to the doubts about the polygraph's re-

liability and the risk that a jury would find results of the examination to be conclusive.

We agree with the words of the appellate court in *Sommer v. Goetze* (1981), 102 Ill. App. 3d 117, 121, that while the rules of evidence are not as rigidly applied at an administrative hearing, such a relaxation of rules "cannot abrogate the right to a just, fair and impartial hearing." Without the benefit of this court's opinion in *Baynes* the appellate court in *Sommer* correctly saw that if a petty criminal "whose potential jeopardy does not exceed a few hundred dollars" cannot have polygraph results admitted at his trial, then evidence admitted against a deputy sheriff facing a "loss of merit employment" should be no less reliable. 102 Ill. App. 3d 117, 121.

Our opinion in *Baynes* highlighting the inherent deficiencies of the polygraph examination supports our holding today that the results of the examination are not admissible at an administrative hearing before the board of fire and police commissioners.

The plaintiffs face the potential of the loss of their livelihood. There is a real danger that the board of fire and police commissioners will find the results of the polygraph examination completely determinative of guilt or innocence. We feel that the *Sommer* case articulates the correct rule that polygraph evidence is not reliable enough to be used as substantive evidence in an administrative proceeding before the board. The findings before a board of fire and police commissioners must be based upon facts proved by competent evidence. *Fantozzi v. Board of Fire & Police Commissioners* (1962), 35 Ill. App. 2d 248, 257, *aff'd* (1963), 27 Ill. 2d 357.

Admission of polygraph evidence at a hearing before the board of fire and police commissioners would also compromise our role in undertaking any review of an agency's decision under the Administrative Review Act

(Ill. Rev. Stat, 1979, ch. 110, par. 264 *et seq.*), in those cases where polygraph evidence had been considered in the board's decision-making process.

We next address whether the refusal of a police officer to take a polygraph examination can be grounds for disciplinary action against the officer. Our appellate court on four different occasions has held that refusal was cause for disciplinary action. *Myers v. Cook County Police & Corrections Merit Board* (1978), 67 Ill. App. 3d 223; *Piotrowski v. State Police Merit Board* (1980), 85 Ill. App. 3d 369; *Williams v. Police Board* (1972), 8 Ill. App. 3d 345; *Coursey v. Board of Fire & Police Commissioners* (1967), 90 Ill. App. 2d 31.

We are mindful of the need for public employers to maintain personal integrity in the eyes of those they serve; we also understand that a police chief has to have the authority to require officers to answer questions specifically related to the performance of the officer's official duties in cooperation with the investigation into an officer's official conduct. And while we recognize that a polygraph examination is an instrument of some investigatory utility and value, we nevertheless conclude in view of our disposition as to the inadmissibility of polygraph results at the officer's administrative hearing that a municipal police officer can refuse to submit to a polygraph examination and such a refusal cannot be used as the basis for filing of charges seeking disciplinary action against the officer.

We do not lightly rule that an internal order of a municipal police department is improper. We are not attempting in finding in favor of the plaintiffs to, as the appellate court in *Coursey v. Board of Fire & Police Commissioners* (1967), 90 Ill. App. 2d 31, 43, described it, "vitiate the systematic authority and discipline upon which proper enforcement of the law is dependent." (90 Ill. App. 2d 31, 43.) It would be inconsistent for us to

find that the polygraph results are not admissible in front of the board of fire and police commissioners because the examination is not reliable enough, and then hold an officer's refusal to submit to such a test could be grounds for a disciplinary action being brought by the police chief.

In *DeVito v. Civil Service Com.* (1961), 404 Pa. 354; 172 A.2d 161, the Supreme Court of Pennsylvania held that refusal of Philadelphia police officers to take the polygraph examination did not establish "just cause" to warrant the officers' dismissal. The court took cognizance of the questionable accuracy of the test, recognized that the examination was not judicially acceptable in Pennsylvania, and found that the willingness or the unwillingness of an officer to submit to the test is inadmissible before the Civil Service Commission (404 Pa. 354, 360, 172 A.2d 161, 164.) See also *Burrough of Elmwood Park v. Fallon* (1974), 128 N.J. Super. 51, 319 A.2d 72, where the court said that a police officer is entitled to refuse to take a polygraph examination and that refusal cannot be used against him as a basis for a disciplinary action. 128 N.J. Super. 51, 57, 319 A.2d 72, 76.

In conclusion we hold that the chief of police of the Rockford police department cannot compel Officers Kaske and Triolo to submit to polygraph examinations. We find that the officers' refusal cannot be used as a basis for disciplinary charges to be brought against them. The judgment of the appellate court affirming the dismissal by the circuit court of Winnebago County is reversed, as is the judgment of the circuit court.

We also hold that the decision to discharge Officer Robert Collura by the board of fire and police commissioners of the village of Itasca cannot stand. The appellate court's order affirming the circuit court's order affirming the decision of the Board is reversed, as is the judgment of the circuit court. We remand Officer Col-

lura's cause to the board of fire and police commissioners of the village of Itasca for a new hearing, in which any results of the police officer's polygraph examination, any opinions offered by the polygraph examiner, or any references to the polygraph examination are inadmissible as evidence.

*55501 — Judgments reversed.*
*55599 — Judgments reversed;*
*cause remanded,*
*with directions.*

JUSTICE MORAN, concurring in part and dissenting in part:

I disagree with that portion of the majority opinion which holds that police officers cannot be compelled to submit to a polygraph examination. The majority reasons that "[i]t would be inconsistent for us to find that the polygraph results are not admissible in front of the board of fire and police commissioners *** and then hold an officer's refusal to submit to such a test could be grounds for a disciplinary action." (96 Ill. 2d at 310-11.) For a number of reasons I consider unfounded the concern over this supposed inconsistency.

Polygraph evidence is disallowed during an administrative hearing or court proceeding because the reliability of the examination results has not been sufficiently established. Consequently, it would be improper to subject an individual to the substantial risk that the fact finder would consider this evidence conclusive on the issue of his or her guilt or innocence. (*People v. Baynes* (1981), 88 Ill. 2d 225.) However, there is a distinction between the use of polygraph examinations as evidence upon which the outcome of a proceeding may depend and their use as an investigatory tool. "Such tests are recognized as having some value in investigation, even though they are not yet sufficiently reliable to be admitted in evidence." *McCain v. Sheridan* (1958), 160 Cal.

App. 2d 174, 177, 324 P.2d 923, 926; see, *e.g., Seattle Police Officers' Guild v. City of Seattle* (1972), 80 Wash. 2d 307, 494 P.2d 485 (*en banc*).

As an investigatory tool, police chiefs utilize polygraph examinations to narrow the focus of inquiry and, frequently, to exonerate the accused officer. The majority's decision will serve only to impede and lengthen these investigations while at the same time allowing individuals to perform their duties in the face of other officers' and the public's distrust. No one can possibly benefit when the public loses respect for those individuals sworn to uphold the law. Further, both criminal suspects and complainants are frequently requested to take polygraph tests as an aid in investigations. It is incongruous that officers may refuse to submit to the very examinations which they expect other citizens to undergo.

It also seems to me that today's opinion disregards the fact that police officers are not simply ordinary citizens. Rather, they are members of a "paramilitary [institution] in which systematic authority and discipline are required to ensure orderly and effective law enforcement." (*E.g., Piotrowski v. State Police Merit Board* (1980), 85 Ill. App. 3d 369, 376; *cf. Gardner v. Broderick* (1968), 392 U.S. 273, 20 L. Ed. 2d 1082, 88 S. Ct. 1913 (police officers, as trustees of the public interest, can be dismissed for failing to answer questions relating to official duties) (*dicta*).) I consider it anomalous that, although officers have a sworn duty to cooperate in the investigation of crime, they now have the unfettered right to obstruct those investigations.

The majority relies upon two decisions for the proposition that police officers may not be required to submit to a polygraph examination. (*Burrough of Elmwood Park v. Fallon* (1974), 128 N.J. Super. 51, 319 A.2d 72; *Stape v. Civil Service Com.* (1961), 404 Pa. 354, 172 A.2d 161.) Of these, *Stape* was essentially "overruled"

by subsequent legislation. (See 18 Pa. Cons. Stat. Ann. sec. 7321 (Purdon 1973) (law. enforcement agencies are exempted from the statutory ban on the administration of polygraph examinations).) On the other hand, numerous cases have recognized a police chief's inherent authority to compel submission to polygraph tests in an effort to maintain an efficient and honest police force. (*E.g., Seattle Police Officers' Guild v. City of Seattle* (1972), 80 Wash. 2d 307, 494 P.2d 485 (*en banc*); *Sorbello v. City of Maplewood* (Mo. App. 1980), 610 S.W.2d 375; *Eshelman v. Blubaum* (1977), 114 Ariz. 376, 560 P.2d 1283; *Roux v. New Orleans Police Department* (La. App. 1969), 223 So. 2d 905, *cert. denied* (1970), 397 U.S. 1008, 25 L. Ed. 2d 421, 90 S. Ct. 1236; *McCain v. Sheridan* (1958), 160 Cal. App. 2d 174, 324 P.2d 923.) Our appellate court has also held that officers may be disciplined for failure to submit to the examination. *Piotrowski v. State Police Merit Board* (1980), 85 Ill. App. 3d 369; *Myers v. Cook County Police & Corrections Merit Board* (1978), 67 Ill. App. 3d 223; *Buege v. Lee* (1978), 56 Ill. App. 3d 793; *Williams v. Police Board* (1972), 8 Ill. App. 3d 345; *Coursey v. Board of Fire & Police Commissioners* (1967), 90 Ill. App. 2d 31.

For the reasons stated herein, I believe the aforementioned cases represent the better view, and would accordingly affirm the judgment of the appellate court in cause No. 55501. However, I do concur with the majority in cause No. 55599.

JUSTICE UNDERWOOD joins in this partial concurrence and partial dissent.