HOWARD S. MEADOW, Appellant, v. THE CIVIL SERV-
ICE BOARD OF THE LAS VEGAS METROPOLITAN
POLICE DEPARTMENT, Respondent.

No. 19550

November 2, 1989                    781 P.2d 772

*Greenman, Goldberg & Raby,* Las Vegas, for Appellant.

*Brown & Kane,* Las Vegas, for Respondent.

## OPINION

By the Court, YOUNG, C. J.:

Appellant argues that because the board considered allegedly improper evidence of a polygraph examination, the district court erred when it affirmed the board's decision. However, we need not address the admissibility of the polygraph evidence because the board heard other substantial evidence supporting its decision to uphold Meadow's termination.

Meadow underwent a polygraph examination in connection with an arrest made by him in September 1987. Donnell Wells charged that Meadow used excessive force when making the arrest. The examination was to verify whether Meadow caused facial injuries to Wells by striking him with an unauthorized chrome baton.

However, Meadow was charged with two other acts of excessive force. At the hearing before the board, two witnesses testified as to a December 1986 incident when Meadow placed the barrel of a gun in an informant's mouth, cocked the trigger, and threatened to "blow his fucking head off" if any police officers were hurt during an upcoming operation. Other witnesses testified as to a July 1987 incident when Meadow beat and choked a suspect who was already handcuffed and under arrest.

Thus, even if we disregard the incident involving Donnell Wells, enough evidence was presented at the board hearing to uphold Meadow's termination. Accordingly, even if the board erred by admitting the polygraph results, this error was harmless and did not prejudice the substantial rights of Meadow. *See* Bezuneh v. Urlacher, 540 N.Y.S.2d 76 (App.Div. 1989) (holding that erroneous reception of polygraph evidence does not require reversal of administrative tribunal's decision when, apart from this evidence, the determination is supported by substantial evidence on the entire record).

Meadow argues that the board erred by allowing Officer Berni to speculate during his testimony about events which he neither saw nor of which he had personal knowledge. However, Officer Berni's testimony in this regard was not speculation evidence. Officer Berni had been a police officer for over fourteen years. He testified that he heard grunts, groans and screams coming from the room where Meadow had taken a handcuffed suspect. According to NRS 50.265, lay witness testimony is limited to

those opinions or inferences which are rationally based on the perception of the witness and helpful to a clear understanding of his testimony or the determination of a fact in issue. Given Officer Berni's experience, his testimony that "it sounded like somebody getting their butt whipped" in the other room was rationally based on his perceptions at the time. Therefore, the board properly admitted his testimony. NRS 50.265.

Finally, Meadow argues that the evidence presented to the board demonstrated that he was an outstanding and dedicated police officer, and that he did not use excessive force in the line of duty. Accordingly, he contends that the board's decision to uphold his termination was arbitrary and capricious, and an abuse of its discretion. Again, Meadow's contention lacks merit.[1]

It's true that a number of persons testified as to Meadow's outstanding performance as a police officer. However, several police officers who worked with Meadow also testified to the excessive force which he used while on the job. Officers Retke and Berni testified regarding the December 1986 incident when Meadow placed a gun barrel in an informant's mouth and threatened to kill him. Officers Berni and Hixson both testified to the July 1987 incident in which Meadow assaulted a burglary suspect who was already handcuffed and under arrest. Meadow's supervisor testified that he carried an unauthorized weapon (the chrome-tipped baton).

Besides this damaging evidence, the record indicates that the

---

[1]The record does reveal substantial positive information concerning Meadow. A career police officer, Meadow has obtained a master's degree in police science and is apparently approaching eligibility for a doctorate degree. As noted in the dissenting opinion, Meadow was active in promoting several programs of positive value to law enforcement and the community which he served. He has received numerous commendations and was discipline-free prior to the occurrence of the incidents resulting in his termination. If we were empowered to function as the equivalent of a board of review, we may very well have concluded that Meadow's termination was unduly harsh. However, our function is to determine whether the Civil Service Board of the Las Vegas Metropolitan Police Department had before it substantial evidence upon which to base its decision. Because it did, we cannot conclude that the board's ruling was arbitrary, capricious or an abuse of discretion. Moreover, Meadow's superior officers in the department, including, presumably, the Sheriff, recommended termination as an appropriate consequence for Meadow's infractions. We are most reluctant, in light of the evidence in this record, to impose on the Sheriff an officer whom he has determined to be unfit for service in the law enforcement agency over which he is responsible. It is difficult to hold heads of organizations responsible for the quality and effectiveness of their efforts if they are forced to work with persons found, by substantial evidence, to be unfit for service.

members of the board put a substantial amount of thought into their decision to uphold Meadow's termination. Board member Clark noted Meadow's fine credentials as a police officer, but also stated that he questioned Meadow's judgment, professionalism and credibility. Clark observed that an officer in Meadow's position "must be beyond reproach." Board member Boyer agreed with Clark as to Meadow's use of poor judgment. Finally, board chairman Agonia declared that:

> As counsel for the Department stated, this case is not, it's not an easy case to deal with, because we have at stake the career of an officer who has obviously distinguished himself both as a member of this community and as a police officer. . . . I don't believe that [the] good work that has taken place over the years and [the] good work that may continue is any excuse for the overlooking of the three incidents that have taken place. The incident with the gun in the mouth, I find inexcusable. Even for a police officer who had been on this force for one year. I think that that demeaning kind of behavior should not be meted out to anyone, irrespective of whether they be an unreliable source of information or whatever. The excessive force that was exhibited in the July 4, 1987 incident, whether excessive or not, I don't believe that you know there's any excuse for it in terms of the leadership that has to be exhibited by supervisors within the Metropolitan Police Department. The use of the baton which was clearly not authorized is just another chain in the events.
> . . .

To be arbitrary and capricious, the decision of an administrative agency must be in disregard of the facts and circumstances involved. State v. Ford, 755 P.2d 806, 808 (Wash. 1988). In this case, the record indicates that the board considered all of the evidence, pro and con, regarding Sergeant Meadow, before deciding to uphold his termination. Accordingly, the board did not act arbitrarily and capriciously, nor abused its discretion. NRS 233B.140(5)(f). Therefore, the district court properly upheld the board's decision. Gandy v. State ex rel. Div. Investigation, 96 Nev. 281, 282, 607 P.2d 581 (1980).

Appellant's other contentions lacking merit, we hereby affirm the decision of the district court.

STEFFEN, SPRINGER, and MOWBRAY, JJ., concur.

ROSE, dissenting:

Respectfully, I dissent.

At the Las Vegas Metropolitan Police Department Civil Serv-

ice Board (the Board) appeal hearing, the Board received, over objection, the results of a polygraph examination that indicated Meadow had been deceptive in answering several questions but that an officer who testified somewhat contrary to Meadow about the same incident had been truthful. The receipt of this evidence was clearly improper and I cannot say that such error was harmless. Therefore, I would reverse and remand for a new administrative review hearing.

This court has consistently held that polygraph examination results are not admissible evidence because they do not possess the trustworthiness or reliability demanded of competent evidence. Warden v. Lischko, 90 Nev. 221, 224, 523 P.2d 6, 8 (1974); American Elevator Co. v. Briscoe, 93 Nev. 665, 671, 572 P.2d 534, 535 (1977). While administrative hearings may be held with less formality than civil or criminal trials, only relevant and reliable evidence should be received at such proceedings; polygraph examination results do not have sufficient reliability. *See* Higley v. Edwards, 678 P.2d 775 (Or.App. 1984).

In a similar case, the Supreme Court of Illinois held that the results of a polygraph examination given to police officers were not admissible in disciplinary proceedings before the Board of Fire and Police Commissioners and the receipt of such results at the hearing required reversal of the disciplinary action taken. Kaske v. City of Rockford, 450 N.E.2d 314, 319 (Ill. 1983). And in a subsequent case, an Illinois Appellate Court held that the mere receipt of polygraph examination results required reversal of the case and remand for a new administrative hearing.

> In Kaske v. City of Rockford (1983), 96 Ill.2d 298, 70 Ill.Dec. 841, 450 N.E.2d 314, *cert. denied* (1983), 464 U.S. 960, 104 S.Ct. 391, 78 L.Ed.2d 335, our supreme court held that polygraph evidence was inherently deficient and was inadmissible in an administrative proceeding. The introduction alone of such evidence is reversible error. The trial court correctly held in the present case that the introduction of polygraph evidence at the hearing also required reversal.

Salvaglio v. Board of Fire and Police Com'rs, 465 N.E.2d 1065, 1070 (Ill.App. 1984) (citations omitted).

The Las Vegas Metropolitan Police Department recommended that Meadow be terminated for three incidents of excessive force and the use of a baton, an unauthorized weapon, during one of those incidents. In reviewing the record, two of these incidents appear to be more in the nature of inappropriate conduct rather than the use of excessive force. A pre-termination hearing was held and the recommendation of the Department was affirmed.

The record on appeal does not contain a transcript of the pre-termination hearing and what evidence was presented.

The hearing before the Board was an appeal of the pre-termination Board decision. The recommendation of the pre-termination Board was accepted and then Meadow went forward with evidence attempting to show that the decision to terminate him was excessive and a less severe discipline would have been more appropriate. This procedure strikes me as unusual in that the pre-termination hearing was where the primary evidence was received, but the transcript of this hearing is not part of the record.

Through several witnesses, Meadow established that he was a career police officer, held a master's degree in police science and was near receiving his doctorate degree. He had never been disciplined prior to the incidents in question, had received numerous commendations and was an officer who believed in pro-active police work. Pro-active police work was defined as taking the initiative in trying to prevent crimes from happening and assertively pursuing those who commit offenses. Meadow was instrumental in establishing both the Street Narcotics Unit and the Burglary Attack Team at the Las Vegas Metropolitan Police Department. Putting the issue of excessive use of force aside, Meadow is precisely the type of police officer you would want assigned to your neighborhood.

Meadow called as a witness the police lieutenant who investigated one of the three incidents. He testified that Meadow was an excellent police officer and that he found no excessive force when he investigated the incident where Meadow and other officers apprehended a suspected car thief. On cross-examination, the Department's attorney asked the lieutenant if the results of a polygraph examination that Meadow had taken would help him in determining whether excessive force was really used. In arguing that the examination results could legally be received, the Department's attorney stated:

> It may be inadmissible in a court of law, but they are certainly admissible under the relaxed rules of evidence as applied by this Board. . . . The results of the polygraph in determining the termination was the appropriate action are very significant in that they show that Officer Hixson told the truth about the incident and Sergeant Meadow lied. . . .

Meadow's attorney objected to the receipt of any polygraph examination results, but the Chairman of the Board received it in evidence. The examination results showed that Meadow was deceptive in answering several questions concerning the use of excessive force in apprehending the suspected car thief and the

subsequent investigation that followed. No foundation for the admission of the polygraph examination was established and the polygraph examiner never testified.

The decision to terminate Meadow or impose a lesser disciplinary penalty was a very close one. Meadow was a career police officer with a distinguished police record and no disciplinary problems until these incidents. With the admission of the polygraph examination results, the Board was shown that Meadow was a liar in addition to an officer who had used excessive force. The Board's decision on the termination of Meadow was split, two in favor and one opposed. The one board member against termination argued forcefully that "the punishment does not fit the crime."

In the context of this close determination, the receipt of the polygraph examination had the real potential to tip the scales against Meadow. Credibility was very important in this case. In fact, one of the Board members who voted for termination stated that in reviewing one of the incidents, "we have a credibility problem here." The polygraph results provided evidence that severely damaged Meadow's credibility. I therefore cannot say that the improper receipt of the polygraph results were harmless or that substantial evidence supports the dismissal and disregard the damning conclusions of the polygraph examination.

If the men accused of the car theft went to trial, any incriminating polygraph examination they might have taken would not be admissible at their criminal trial, and any conviction secured at such trial would be reversed. The decision to terminate Meadow was no less serious to him and he should have at least the same rights as would a criminal defendant. Meadow testified what law enforcement meant to him:

> Law enforcement is the only thing I know. I've dedicated my whole life to being the best police officer I could. Everything I've done has been for this community and this department as a whole. My whole life revolves around being a police officer, as my wife can tell you.

His livelihood was taken from him without a warning or any attempt to rehabilitate him.

Polygraph examination results should not be admitted at administrative hearings any more than at trials, and any decision made after such evidence is received should be reversed unless it can be said that there is no reasonable possibility that the clearly improper evidence influenced the final outcome. That cannot be said in this case and the decision to terminate Meadow should be reversed and remanded for a new hearing before the Board.