No. 2--06--0624          Filed: 4-12-07

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| MICHELLE F. KELLEY, | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 05--MR--375 |
| | ) | |
| THE SHERIFF'S MERIT COMMISSION | ) | |
| OF KANE COUNTY, JAMES R. | ) | |
| KLINKHAMER, Chairman, ELMER J. | ) | |
| WEBER, Vice Chairman, STEPHEN W. | ) | |
| WENNMACHER, Secretary, and KENNETH | ) | |
| R. RAMSEY, as Sheriff of Kane County, | ) | Honorable |
| | ) | Michael J. Colwell, |
| Defendants-Appellees. | ) | Judge, Presiding. |

_____

JUSTICE O'MALLEY delivered the opinion of the court:

Plaintiff, Michelle F. Kelley, is a corrections officer in the employ of the sheriff of Kane County. Following a disciplinary hearing before the Kane County Sheriff's Merit Commission (Commission), she was suspended without pay for 120 days for insubordination because she refused to comply with a superior officer's order that she submit to a polygraph examination. Plaintiff filed a timely complaint for administrative review in the circuit court of Kane County, naming the Commission, its members, and Kane County Sheriff Kenneth R. Ramsey as defendants. The trial court affirmed the Commission's decision, and this appeal followed. We reverse and remand.

In Kaske v. City of Rockford, 96 Ill. 2d 298 (1983), our supreme court ruled that it was error to use the results of a polygraph examination at an Itasca police officer's disciplinary hearing. The court further ruled that two Rockford police officers could not be disciplined for refusing to submit to polygraph examinations. Less than a year after Kaske was decided, the General Assembly enacted the Uniform Peace Officers' Disciplinary Act (Act) (50 ILCS 725/1 et seq. (West 2004)). Section 3.11 of the Act provides:

"In the course of any interrogation[,] no [peace] officer shall be required to submit to a polygraph test, or any other test questioning by means of any chemical substance, except with the officer's express written consent. Refusal to submit to such tests shall not result in any disciplinary action nor shall such refusal be made part of his or her record." 50 ILCS 725/3.11 (West 2004).

In the proceedings before the Commission, plaintiff claimed she was entitled to the protection of section 3.11 of the Act. However, that provision applies only to "peace officers" within the meaning of section 2--13 of the Criminal Code of 1961 (720 ILCS 5/2--13 (West 2004)). See 50 ILCS 725/2(a) (West 2004). Plaintiff's duties as a corrections officer do not accord her the status of a peace officer, and she no longer contends that section 3.11 supplies her with a defense against the charge of insubordination. She maintains, however, that the holding of Kaske was not dependent on the plaintiffs' status as peace officers and that section 3.11 does not limit the scope of Kaske's holding. Thus, she invokes Kaske as an independent basis for reversing the Commission's decision. Defendants argue that section 3.11 cannot be construed to apply to corrections officers and that for this court to do so would amount to a legislative act. Contrary to plaintiff's argument, defendants

maintain that disciplinary proceedings involving corrections officers are beyond the reach of Kaske's holding.

Before considering the applicability of Kaske, we note that on appeal from the judgment in an administrative review proceeding, the appellate court reviews the administrative agency's decision, not the trial court's. Dowrick v. Village of Downers Grove, 362 Ill. App. 3d 512, 515 (2005). Rulings of law are reviewed de novo, but the agency's findings of fact will be upheld unless against the manifest weight of the evidence. Dowrick, 362 Ill. App. 3d at 515. The scope of the holding in Kaske is a question of law, and we review the issue de novo.

In ruling that polygraph evidence was inadmissible in disciplinary proceedings against an Itasca police officer, the Kaske court relied, in part, on People v. Baynes, 88 Ill. 2d 225 (1981). Baynes held that the use of polygraph evidence in a criminal prosecution was improper even though the parties had stipulated to the admission of the evidence. The Kaske court reasoned as follows:

"It is unnecessary to reiterate the exhaustive review of polygraph evidence we undertook in People v. Baynes. It is enough to say that in holding that admission of stipulated-to polygraph evidence at a criminal trial constituted error, we recognized that the process of accurately recording the instrument's results and then correctly interpreting those results 'has not reached a level of sophistication that makes it generally more probative than prejudicial.' [Citation.] We found in Baynes that the stipulation of the parties did not make evidence otherwise considered not reliable enough admissible because it was agreed to. [Citation.]

\*\*\*

We agree with the words of the appellate court in Sommer v. Goetze (1981), 102 Ill. App. 3d 117, 121, that while the rules of evidence are not as rigidly applied at an

administrative hearing, such a relaxation of rules 'cannot abrogate the right to a just, fair and impartial hearing.' Without the benefit of this court's opinion in Baynes the appellate court in Sommer correctly saw that if a petty criminal 'whose potential jeopardy does not exceed a few hundred dollars' cannot have polygraph results admitted at his trial, then evidence admitted against a deputy sheriff facing a 'loss of merit employment' should be no less reliable. [Citation.]

    \*\*\*

The plaintiffs face the potential of the loss of their livelihood. There is a real danger that the board of fire and police commissioners will find the results of the polygraph examination completely determinative of guilt or innocence. We feel that the Sommer case articulates the correct rule that polygraph evidence is not reliable enough to be used as substantive evidence in an administrative proceeding before the board." Kaske, 96 Ill. 2d at 308-09.

Consolidated with the Itasca police officer's appeal was an appeal by two Rockford police officers seeking a declaratory judgment that they were not subject to discipline for refusing to submit to polygraph examinations. Addressing the question of "whether the refusal of a police officer to take a polygraph examination can be grounds for disciplinary action against the officer" (Kaske, 96 Ill. 2d at 310), the court offered the following analysis:

"[W]hile we recognize that a polygraph examination is an instrument of some investigatory utility and value, we nevertheless conclude in view of our disposition as to the inadmissibility of polygraph results at the officer's administrative hearing that a municipal

police officer can refuse to submit to a polygraph examination and such a refusal cannot be used as the basis for filing of charges seeking disciplinary action against the officer.

*** It would be inconsistent for us to find that the polygraph results are not admissible in front of the board of fire and police commissioners because the examination is not reliable enough, and then hold an officer's refusal to submit to such a test could be grounds for a disciplinary action being brought by the police chief." Kaske, 96 Ill. 2d at 310-11.

Defendants insist the Kaske court's statement in the above passage that "a municipal police officer can refuse to submit to a polygraph examination and such a refusal cannot be used as the basis for filing of charges seeking disciplinary action against the officer" (emphasis added) (Kaske, 96 Ill. 2d at 310) encapsulates the holding of the case and limits its precedential force to cases involving disciplinary proceedings against police officers. This view is overly simplistic. Under the doctrine of stare decisis, " '[w]here the Supreme Court has declared the law on any point, it alone can overrule and modify its previous action, and the lower judicial tribunals are bound by such decision and it is the duty of such lower tribunals to follow such decision in similar cases.' " Panchinsin v. Enterprise Cos., 117 Ill. App. 3d 441, 444 (1983), quoting Agricultural Transportation Ass'n v. Carpentier, 2 Ill. 2d 19, 27 (1953). But to determine a judicial decision's precedential effect in a subsequent case, a court must consider the ratio decidendi of the earlier decision. As the Panchinsin court observed:

"The ratio decidendi of a case is 'the principle of law which is the basis of the actual decision and therefore, by virtue of the doctrine of stare decisis, the principle which subsequent courts, faced with a set of facts indistinguishable in any material particular from

those in the precedent case, must apply to the decision of the subsequent case also.' [Citation.] *** [T]o determine the ratio decidendi of a case, a court must ascertain (1) what facts were considered material by the court in the prior case, and (2) 'what proposition of law justified that decision on these material facts.' [Citation.]" Panchinsin, 117 Ill. App. 3d at 444.

In ruling that polygraph evidence was inadmissible in disciplinary proceedings against the plaintiffs, the Kaske court was animated by the legal principle that the plaintiffs, whose livelihoods were at stake, were entitled to a " 'just, fair and impartial hearing.' " Kaske, 96 Ill. 2d at 309, quoting Sommer v. Goetze, 102 Ill. App. 3d 117, 121 (1981). The material fact underlying the ruling was not that the plaintiffs were police officers, but that polygraph evidence violates the requirement of a fair hearing because the examinations do not produce results that are more probative than prejudicial. Polygraph examinations are no more reliable when the subject is a corrections officer rather than a police officer. Thus, the supreme court's rationale for excluding polygraph evidence in Kaske applies with equal force here.

In the Kaske court's view, the second ruling--that the Rockford police officers could not be forced to submit to a polygraph examination or punished for refusing to do so--simply followed from the first as a matter of consistency. Again, the material fact was that polygraph evidence is not considered sufficiently reliable to be admitted in a disciplinary proceeding. The fact that the plaintiffs in Kaske were police officers was not a fact considered material by the court.

The sheriff contends that plaintiff is asking us to encroach upon the legislative function by giving county corrections officers the right to refuse a polygraph examination despite the fact that the General Assembly has not chosen to give them that right. The sheriff is correct that our decision

here adds to the protection provided by section 3.11 of the Act: we have acknowledged that section 3.11 applies only to peace officers, not to corrections officers. However, in drafting section 3.11, the legislature included no language indicating that the protection from mandatory polygraph examinations should be limited to that protection explicitly provided in that section. Indeed, the sheriff does not argue that in enacting section 3.11 the General Assembly intended to preempt any and all judicial regulation of the administrative disciplinary process applicable to public employees other than peace officers, or to limit the natural reach of our supreme court's prior decision in Kaske. Thus, section 3.11 is silent on the issue before us, and we turn to Kaske for guidance.

So long as a judicial ruling has not been overruled or otherwise limited by a subsequent legislative enactment, the ruling remains valid and we are bound by stare decisis to follow it. While it is true that, as a rule of statutory interpretation, we may not depart from the statute by reading in it exceptions or conditions the legislature did not express (In re Estate of Lower, 365 Ill. App. 3d 469, 478 (2006)), we hold that the protection here comes not from the statute but rather from our supreme court's decision in Kaske, and, as such, we rely not on the plain-language-statutory-interpretation rule but rather the rule of stare decisis.

Put simply, we follow one rule when interpreting a legislative act and another when applying a supreme court ruling. The sheriff is correct in that, if we were interpreting only a legislative act, we could not add language not expressed in the statute. However, since we are interpreting the supreme court's ruling in Kaske, we must follow the ratio decidendi of that case even if it causes us to expand upon the language of the Act.

The application of Kaske to the facts of this case is a judicial act, not a legislative one, and, pursuant to the above-articulated principles of stare decisis and the fact that the legislature expressed

no intention in section 3.11 to limit Kaske, we reject the sheriff's argument that applying Kaske encroaches upon the legislative function.

At oral argument, the sheriff argued that Kaske is inapplicable here because, in Kaske, the results of the polygraph examination were to be used against the officers in an administrative hearing, while, here, the test was part of the investigatory process and was to be used to exonerate plaintiff. The sheriff urged that the holding from Kaske, which is based on the idea that polygraph testing is not sufficiently reliable to be admissible in a proceeding against an officer, may preclude use of test results against an officer in an administrative hearing, but should not be read as precluding the use of such a test as an investigative tool.

The distinction the sheriff urges is legitimate: police often use polygraph testing to direct the focus of their investigations even though they cannot use the test results in a judicial proceeding as evidence. However, it is also the precise point raised in the dissent in Kaske. The Kaske dissent argued that "[a]s an investigatory tool, police chiefs utilize polygraph examinations to narrow the focus of inquiry and, frequently, to exonerate the accused officer. The majority's decision will serve only to impede and lengthen these investigations ***." Kaske, 96 Ill. 2d at 313 (Moran, J., dissenting). Further, the majority opinion stated that it understood the need for a police chief to require officers to answer questions in cooperation with an investigation into the officer's official conduct, and although it "recognize[d] that a polygraph examination is an instrument of some investigatory utility and value, [it] nevertheless conclude[d] in view of its [ruling that polygraph testing was inadmissible] at the officer's administrative hearing that a municipal police officer can refuse to submit to a polygraph examination and such a refusal cannot be used as the basis for filing of charges seeking disciplinary action against the officer." Kaske, 96 Ill. 2d at 310. Though the

Kaske majority did not explicitly state that it considered the dissent's point and nevertheless held that an officer could not be punished for refusing to submit to a purely investigatory (as opposed to evidentiary) polygraph test, we conclude, based on the quoted passage from the majority opinion, along with the fact that defendant's precise argument formed part of the basis of the dissenting opinion, that the supreme court intended its holding to apply to purely investigatory polygraph tests.

We note in passing that no issue has been raised with respect to the impact of any collective bargaining agreement relating to plaintiff's employment. We express no opinion on whether Kaske forecloses a public employer from bargaining for the right to administer polygraph examinations as an investigative tool.

For the foregoing reasons, we reverse the judgment of circuit court of Kane County and remand the case for entry of an order reversing the Commission's decision and awarding other proper relief.

Reversed and remanded.

BOWMAN and KAPALA, JJ., concur.